STATE v. J. H. LYLE and others.

*Eminent Domain—Forcible Trespass—Town Charter, Chap. 58, § 16, Private Acts, 1887—Condemning Land for Streets.*

1. It is the settled law of this State, that private property may be taken, under authority from the State, for public uses, upon just compensation to be made to the owner. But compensation must be provided for to warrant the taking. This is a fundamental condition to the exercise of the right of eminent domain, although such a condition is not expressed in the organic law. A statute authorizing the seizure of private property, in exercise of the right of eminent domain, but making no provision for compensation to the owner, would be void.

100—32

2. The payment for, need not precede the taking of property, under the right of eminent domain, nor is a jury indispensable in assessing the damages. The owner is confined to the special remedy given him, by the statute, under which his property is seized.

3. Where a town ordinance authorized private property to be taken for the opening, extension and widening of streets, and provided for compensation to be made after the taking; *Held,* that officers of the town, who seized the property of a private owner, under an order of the town Commissioners condemning it for a street, were not guilty of a forcible trespass, if they used no more force than necessary, although at the time of seizure the owner had not been paid, and he was present forbidding them.

4. Under the charter of the town of Reidsville, chap. 58, § 16, Private Acts of 1887, it is not necessary that the damages be ascertained and paid *before* taking private property for widening a street. It is the meaning of the act, that the damages shall be ascertained and paid *after* the seizure.

5. A town charter, authorizing the taking of private property for public streets, provided : That, if the owner of the condemned land and the town commissioners could not agree on the damages, the matter should be referred to arbitrators, of whom each party should choose one, the arbitrators to select an umpire in case of disagreement. It was made the duty of such arbitrators to ascertain the damages suffered by, and benefits accruing to, the land owner by opening the street; and both parties were allowed an appeal to the Superior Court. The damages agreed upon, or awarded, were directed to be paid "as other town liabilities, by taxation;" *Held,* that such charter is valid, and vests in the town commissioners plenary authority to pass an ordinance taking land from a private owner for street purposes.

INDICTMENT for forcible trespass, tried before *Clark, J.,* and a jury, at Spring Term, 1888, of ROCKINGHAM Superior Court.

Judgment in favor of defendant on a special verdict. Appeal by the State.

The facts are stated in the opinion.

*Attorney General,* for the State.
No counsel for the defendant.

SMITH, C. J., The defendants, four in number, are charged in the indictment with a forcible trespass in entering upon the lot of C. J. Matthews, he being personally present and forbidding the same, and tearing down and removing a part of the enclosing fence; and upon trial of three of them, who come into Court and entered the plea of not guilty, the jury returned a special verdict in these terms:

That C. J. Matthews was, on the 11th day of October, 1887, owner of and in possession of a lot fronting on Main street, in the town of Reidsville, N. C.; that shortly prior to that date, the commissioners of that town, claiming to act under the authority of section 16 of their charter, private laws of 1887, chapter 58, had a survey made of said street, and passed an ordinance to widen the same to 60 feet; that to do so, would take in something less than two feet of the front of Matthews' yard, including his front fence; that an order was thereupon issued by the commissioners to the defendant Lyle, street commissioner of the town, to remove said fence, and he, with his co-employees, charged in the indictment, proceeded to do so; that the prosecutor came out and forbade the tearing down of the fence, but the defendants persisted, and continued to do so; that Matthews had been given previous notice to the making of the order of removal, but there had been no other condemnation of the strip of land.

That the said order was in this form:

That the street commissioners be ordered to notify all parties having fences or palings encroaching upon the streets or side-walks of the town, as defined by the survey of P. M. Fontaine, adopted this day, June 8th, 1887, to remove said obstructions within sixty days. If any party or parties fail to comply with the above, the street commissioner is hereby ordered to remove the same at expense of owner or owners.

That, upon these facts, if the Court is of opinion that the

defendants in law are guilty, the jury find them guilty; if, upon these facts, the Court is of opinion that, in law, the defendants are not guilty, the jury find them not guilty.

The Court being of the opinion that the defendants are not guilty upon the finding, the verdict was so entered, and from the judgment, discharging the defendants, based upon said ruling, the State appeals.

The section in the charter incorporated in the verdict, by reference, and from which the commissioners derive their authority to pass and enforce their order, is as follows:

The commissioners shall have power to lay out and open, and name any new street or streets, within the corporate limits of the town, whenever by them deemed necessary, and shall have power at any time to *widen*, enlarge, change, or extend, or discontinue any street or streets, or any part thereof, within the corporate limits of the town, and shall have full power and authority to condemn, appropriate, or use any land or lands necessary for any of the purposes named in this section, upon making a reasonable compensation to the owner or owners thereof. But in case the owner of the land and the commissioners cannot agree as to the damages, then the matter shall be referred to arbitrators, each party choosing one, who shall be a freeholder and a citizen of the town, and in case the owner of the land shall refuse to choose such arbitrator, then the mayor shall, in his stead, select one for him; and in case the two chosen, as aforesaid, cannot agree, they shall select an umpire, whose duty it shall be to examine the land condemned, and ascertain the damages sustained, and the benefits accruing to the owner in consequence of the change; and the award of the arbitrators shall be conclusive of the right of the parties, and shall vest in the commissioners the right to use the land for the purposes specified ; and all damages agreed upon by the commissioners, or awarded by the arbitrators, shall be paid as other town liabilities, by taxation: *Provided,* that

either party may appeal to the Superior Court, as now provided by law.

Ever since the ruling in the case of the *Raleigh & Gaston Railroad Company* v. *Davis*, 2 D. & B., 451, decided in 1837, after full argument and an elaborate and exhaustive discussion of the subject, it has been deemed and acted on as the settled law in this State, that private property may be taken under authority of the State for public uses, upon just compensation to be rendered to the owner, to be ascertained in the mode prescribed by law, and that the payment need not precede such taking, nor is a jury indispensable in assessing the damages therefor. The principle is recognized by the Court in *Freedle* v. *North Carolina Railroad Company*, 4 Jones, 89, determined in 1856, but compensation must be provided for, as well as the uses for which the property is taken be public, to warrant the taking and appropriating. *State* v. *Glen*, 7 Jones, 321. This is a fundamental condition, though not expressed in the organic law, underlying the exercise of the Legislative right of eminent domain.

The controversy, in the present case, turns upon the construction of the charter, which has been recited in full, and whether, in providing the method for ascertaining the compensation to be paid the owner, and the means by which this is to be done, a prepayment is necessary before the property can be taken, and this following the condemnation in the mode pointed out in the enactment.

Our examination of the statute and the terms in which the power, to "widen, enlarge, change or extend, or discontinue any street or streets, or any part thereof, within the corporate limits of the town," is conveyed to the commissioners, satisfies us that it vests in them plenary and ample authority to pass the ordinance for widening the streets, and taking the narrow strip from the front of the yard of the prosecutor required for the purpose.

We think, also, the manner in which funds are to be raised

to make compensation, after the amount has been determined, implies that it may be made *after* the property is taken, and applied to the use of the public. It is true, that the condemnation, appropriation and use are only authorized "upon making a reasonable compensation to the owner," but this is not necessarily a condition precedent to any action in the premises on the part of the town authorities, but are inseparably incident to the full and complete exercise of the delegated power and obligation put on them. If strictly construed, payment would be required before it could be known what sum was to be paid, unless a voluntary agreement between the parties should fix it; for the *condemnation*, as well as use of the premises, upon this interpretation alike is dependent on a previous compensation made. The very manner of raising the necessary funds by taxation presupposes the ascertainment of the compensation, since otherwise the commissioners could not know what sum to levy for the purpose.

The delays, attendant upon an inquiry upon this point, furnished strong reasons for not putting a meaning upon the words that would postpone all action, the public benefit, until the damages are paid. For whatever expedition might be used to determine the amount, an appeal, which is given first to the Superior and thence to the Supreme Court, might so prolong the proposed improvement, and this, at the single instance of one of many equally interested, and not resisting, until its practical advantages might become almost valueless. Could it be intended that such obstructions should, at the will of one discontented owner along the line of the street, be allowed to be put in the way to the disadvantage of all others? And do the words in which it is expressed, reasonably admit, still less require, such an interpretation? We think they do not, and that the town authorities, as in the case of the railroad legislation, may at once proceed, when they have determined on the enlargement of a street,

to have the work done, and no private owner can offer forced resistance, for the sole reason that his land has not been designated, condemned and paid for, and he must await his compensation when it can be raised in the statutory method by taxation, unless the funds are already in the treasury and can be lawfully thus applied.

"In the absence of controlling constitutional provisions," in the language of Judge COOLEY, " it is competent for the State to authorize municipal corporations to take private property for public use *without first making · payment*"—italicised in the text, to give emphasis to the words. Const. Lim., § 480.

So, where remedy or means of redress is afforded the owner of the land, he must pursue that, and can have no other action. *McIntire* v. *The W. N. C. R. R. Co.*, 67 N. C., 278, and, as a corollary, it is plain he could not seek redress by his own hands, nor legally resist those charged with the duty of making the removal. If, however, no remuneration were provided for, the seizure would be unlawful, and the statute, which purports to give authority, purely arbitrary, would be void. *State* v. *Glen*, 7 Jones, 321.

As the persons indicted used no unnecessary force in carrying out the orders of the commissioners in enlarging the width of the street, they have not committed the illegal act charged, and were, unless the State desired to prefer other charges, entitled to their discharge.

There is no error.

Affirmed.