CONNOR, J., dissenting.
The defendants, acting under the authority of the Board of Commissioners of the Town of Creedmoor, entered upon certain land of S. H. Rogers, the prosecuting witness, within the said town and proceeded to open and lay out a public street. Rogers was present and objected. We assume that the acts of the defendant, Lyon, who was mayor, and his associates, constituted a forcible trespass unless they were duly authorized to enter upon and take possession of said land and open it as a public street. At a meeting of the board on 16 May, 1905, the commissioners adopted a resolution condemning the land, upon which the trespass is charged to have been committed, for use as a public street and directing that it be opened. The resolution provided for the appointment of an appraiser on behalf of the town and for notice to Rogers to *Page 477 
select his appraiser, and fix a time and place for Rogers and his appraiser to meet the town appraiser on the premises to fix the compensation.
The town of Creedmoor was chartered by the General Assembly, Private Laws 1905, chapter 398. Section 15 of the act gives to the commissioners plenary power to condemn land for streets, sidewalks and for other town purposes, and makes it their duty to keep the streets in repair. Section 17 prescribes the machinery for condemning land for streets or for other town purposes, and provides that the value shall be appraised by three freeholders of said town qualified to act as jurors and not connected by blood or marriage with the landowner or officially with the town. The section also provides for an appeal. In case no (615) appeal is taken within ten days the condemnation proceedings are final and the money awarded shall be paid from the town funds.
So far as we can see, the authorities of the town acted in strict conformity to the act in passing the resolution condemning the property. They appointed an appraiser and notified Rogers to select one. The fact that he refused and that he appealed to the Superior Court could not have the effect to delay the opening of the street until the appeal was finally determined. The appeal was not from the resolution condemning and appropriating the land to a public use. That was a legislative ex parte act of which Rogers was not entitled to notice and to which he could not be a party. The appeal was necessarily from the report of the appraisers fixing the compensation. As we shall hereafter see, the delay occasioned thereby in the payment of the money could not stay the sovereign power in taking possession of the land.
We agree with the Attorney-General that if the provisions of the charter of Creedmoor are insufficient so that the power of eminent domain cannot be lawfully exercised by the town authorities, the defendants would be guilty. It is objected that the charter makes no provision for notice to the landowner, and, therefore, defendants cannot justify under it. Mr. Mills, in his work on Eminent Domain, states that notice is not absolutely necessary. Seizure is constructive notice and the charter of the proceeding gives notice to the world. Section 94. But we hold that, while the landowner was not entitled to notice, when the Legislature, or the commissioners to whom it has delegated its powers, appropriated his property to a public use, he was, however, entitled to notice and a hearing when his compensation was fixed. Mr. Elliott, in his work on Roads and Streets, sec. 260, examines this question carefully and says: "It is, however, held in most of the cases which have given (616) the subject careful consideration that a statute will be valid which determines without any interference a question of the necessity for the *Page 478 
appropriation, or submits it without providing for notice to an inferior tribunal, but that a statute which undertakes to determine the question of compensation or to submit it to commissioners or appraisers, without providing for notice, is unconstitutional." The same author says, in sec. 198: "There are some courts of high authority which hold that although notice is indispensable, it is not essential to the validity of the statute that it should provide for notice, and that it is sufficient if due notice is actually given." The authorities he cites are from some of the ablest courts in this country and fully support the author's views.
Of what steps and proceedings is the landowner entitled to notice. 2 Lewis, Eminent Domain, sec. 66, answers the question as follows: "All questions relating to the exercise of the eminent domain power and which are political in their nature and rest in the exclusive control and discretion of the Legislature may be determined without notice to the owner of the property to be affected. Whether the particular work or improvement shall be made or the particular property taken are questions of this character and the owner is not entitled to a hearing thereon as a matter of right.
Other authorities hold the same view. The Supreme Court of Ohio says: "It is not upon the question of the appropriation of lands for public use, but upon that of compensation for lands so appropriated, that the owner is entitled of right to a hearing in court and the verdict of a jury."Zimmerman v. Canfield, 42 Ohio St. 463. To the same effect, see People v.R. R., 160 N.Y. 225.
While the charter of Creedmoor makes no provision for notifying the landowners of contemplated action by the commissioners, it provides (617) for ample notice when the landowner's property is to be appraised and his compensation fixed. In fact, it gives him the right to appoint one of the appraisers and provides that one shall be appointed by the commissioners and those two shall select a third. The charter further provides that the report of the appraisers shall be signed by at least two of them and shall be filed with the mayor and "lie in his office ten days and be subject to inspection." It also provides for an appeal to the Superior Court by the landowner if he is dissatisfied. Giving the landowner the right to select one of the appraisers and the right of appeal are tantamount to an express provision requiring notice to him of the appraisement. The board required such notice to be given to Rogers and it is admitted that he refused to act under it and to appoint an appraiser. If he had not received the notice he could not have refused to act. Instead of selecting "his man," as the statute provided, *Page 479 
at the appointed hour he appeared on the ground and seated himself upon the fence and thereby endeavored to obstruct the opening of the street.
Mr. Randolph, in his work on Eminent Domain, sec. 338, says: "A condemnation proceeding which does not provide for notice seems to be considered in some decisions as essentially defective. But the better view is that such act may be made effective by actually giving the proper notice. Thus it has been held that notice is plainly intended where the act contemplates the participation of the owner in the proceedings, as where it authorizes him to assist in striking a jury or gives him the right to appeal."
See, also, S. v. Jersey City, 24 N.J. L., 662; S. v.Trenton, 36 N.J.L. 499; Kramer v. Cleveland,5 Ohio St. 140; Swan v. Williams, 2 Mich. 427;R. R. v. Bretzell, 75 Md. 94; R. R. v. Warner, 61 Ill. 52.
Mr. Lewis recognizes it as settled law by repeated adjudications that statutes authorizing condemnation and making no provision for notice are valid if actual notice is given. Lewis on Eminent Domain, (618) sec. 368. But it is unnecessary that we should go that far in this case. But at the same time he says: "By far the greater portion of the cases proceed upon the principle of implying a requirement to give notice from the provisions of the statute itself." The implication requiring notice in the charter of Creedmoor is plain, and in pursuance thereof the notice was given. That is the ground upon which we place our decision.
2. Has the statute provided a proper tribunal to fix the compensation?
We agree with the learned Chancellor of New York that "the government is bound in such cases to provide some tribunal for the assessment of the compensation or the indemnity before which each party may meet and discuss their claims on equal terms." 2 Kent Com., 399.
There is no constitutional provision in our State which guarantees a jury trial in such proceedings. The Constitution of the State does not refer to the right of eminent domain. The right to condemn and the duty to pay compensation are recognized by the courts as a right and duty appertaining to sovereignty, which the State may exercise freely upon all proper occasions and which a jury has no right to control, except where an appeal is taken and tried in the nisi prius courts. Scudder v. TrentonFalls Co., 1 N. J., Eq., 694.
It was held by this Court as early as 1837, in an elaborate opinion byChief Justice Ruffin, that an assessment for damages in such a proceeding need not be made by a jury of twelve freeholders. It is not a controversy within the meaning of the Bill of Rights, nor is it such a trial *Page 480 
by jury as that instrument declares shall be "sacred and inviolable."R. R. v. Davis, 19 N.C. 452. If, however, a jury trial were guaranteed the landowner by the fundamental law, his rights in that respect are fully protected by his right of appeal to a court where all issues of fact are triable by jury. S. v. Lytle, 138 N.C. 738. The method for the assessment of damages in the Creedmoor charter has been passed upon (619) and fully approved by this Court in S. v. Lyle, 100 N.C. 499. In that case the charter of Reidsville was under consideration and the section relating to the appraisement is copied in the opinion of ChiefJustice Smith. The two are nearly identical, with the exception that in the Reidsville charter the mayor can appoint an appraiser if the landowner refuses. We do not think such omission in the Creedmoor charter invalidates it, for if the landowner refuses to select an appraiser it is his own folly. It is not necessary for us to decide as to the power of the mayor to fill the vacancy on the board of appraisers occasioned by the obduracy of the landowner. As he has taken an appeal his damages will be assessed denovo by a tribunal whose jurisdiction is undoubted. Certainly the stubbornness of the landowner cannot be permitted to put a stop to the exercise of an undoubted and necessary power given to all towns by the General Assembly. The fact that the appraisers are freeholders of Creedmoor makes no difference. The question has been decided in other States, as well as our own, and it has been held that where there is a right of appeal, or where there is authority in a court of competent jurisdiction to review the proceedings, the common council of the town seeking to appropriate the land may appoint all of the appraisers. Elliott on Roads and Streets, sec. 281, and cases cited. In the Reidsville charter, passed upon by this Court inLyle's case, the statute provided that all the appraisers should be freeholders and citizens of the town. Lyle's case is practically on all-fours with this, and as it has remained unchallenged since 1888, we see no reason to overrule it now. It is cited and approved in several cases, the latest being R. R. v. Newton, 133 N.C. 134.
3. As soon as the commissioners in the exercise of the powers delegated to them appropriated the land to a public street, they had the right to enter and open it without awaiting the payment of damages. (620) S. v. Lyle, supra; Cooley Const. Lim., sec. 480. This question is fully discussed in Lyle's case and sound reasons given why the public needs should not await the assessment and payment of damages. We think that decision is supported by the great weight of authority, R. R. v.Davis, supra; R. R. v. Parker, 105 N.C. 246; R. R. v. Newton, supra. *Page 481 
The present Chief Justice says in Newton's case: "Formerly the landowner had no right to a jury trial in fixing compensation upon condemnation of the right of way, nor was the compensation required to be paid before entry. The Code, sec. 1946, changed this as to railroads by requiring the company to pay into court the sum assessed before entry." This opinion was approved by a unanimous court and delivered in 1903. A distinction is made as to the time of payment in cases where the seizure is made by the Sovereign (as in this case), and where the land is condemned by a quasi public corporation exercising the power of eminent domain. In the former case, and in the absence of constitutional restrictions, it is held in most of the states that the making of compensation need not precede an entry upon the property where (as in this case) provision is made by the sovereign power for the payment of the money. Lewis on Eminent Domain, sec. 456, and notes thereto, citing all the cases to that effect; Randolph on Eminent Domain, sec. 291; A. E. (2 Ed.), vol. 10, p. 1139, and cases cited: Elliott, sec. 241. In Mills on Eminent Domain, sec. 125, North Carolina is put down as one of the States wherein it is held that compensation need not precede the entry, but that there may be an entry and adjustment afterward. Johnston v. Rankin, 70 N.C. 550; R. R. v.McCaskill, 94 N.C. 746.
The statute requires the report of appraisers to lie in the mayor's office for ten days for purposes of inspection and appeal and provides that unless an appeal is taken from such report "the land so appraised shall stand condemned for the use of the town and the price fixed shall be paid," etc. We think that this applies only to the procedure (621) for fixing the price to be paid and means that if no appeal is taken from the appraised value the land shall stand condemned at such value. The appeal is not allowed to postpone the right of entry. Such a construction as that would seriously interfere with and indefinitely delay public works, such as opening or extending streets and the like. "Public policy forbids the suspension of operations on works of internal improvement during the pendency of litigation to ascertain the damage to which parties may be entitled." Phifer v. R. R., 72 N.C. p. 434.
For the reasons given we are of opinion that the entry of defendants was rightful and that upon the special verdict they are not guilty. The judgment of the Superior Court is
Affirmed.