The complaint alleges that the defendant is the Board of County Commissioners of Lenoir County, composed of H.E. Moseley, R.R. Rouse, Hugh Bryan, J.R. Fields and Norman West, and Frank Rhem is the duly appointed and acting superintendent of roads of Lenoir County. That the plaintiffs own certain land in Moseley Hall Township, Lenoir County — 116 acres, and 98 acres of same are cleared and in cultivation. That on the north of this land Garland Waters and others are in control of a millpond on which is situated a grist-mill. That the millpond is not on the LaGrange-Kinston Highway, but is situated on two or more public roads or paths, one of which leads to the LaGrange-Kinston Highway. That certain people, without the consent of plaintiffs, for the past two years have been going over their land from the public road to the mill. That at a meeting of the Board of Commissioners of Lenoir County on Monday, 9 July, 1923, a resolution was passed whereby the establishment and location of a road across the plaintiffs' lands was authorized and directed. Said resolution is as follows:
"ORDER OF BOARD OF COMMISSIONERS"
"North Carolina — Lenoir County.
"In the Matter of Petition for Public Road from the Old Kinston-LaGrange Highway to Waters' Millpond.
"At an adjourned meeting of the Board of Commissioners of Lenoir County, under date of Monday, 9 July, 1923 (said meeting being held at such time and place pursuant to an adjournment of the regular meeting *Page 492 
on the first Monday in July), a petition having been presented requesting this board to open, locate and maintain a public road from the old Kinston-LaGrange public road to Waters' millpond, and the said petition having been carefully considered and examined, and it appearing that the same is signed by a large number of citizens of the county, especially of the citizens of Moseley Hall Township, and the petition being further examined and it appearing that the said Waters' millpond is a place where there is maintained a regular grist-mill that grinds for toll, and is a public mill; and further, that the said millpond is now being used as a local resort and place for bathing, and that a large number of the public go to said place for the aforesaid purposes and for other public purposes, and that for some time there has been a roadway from the said old Kinston-LaGrange public road to Waters' mill across the land of W.N. Parks, and now located on his ground, but that said road has not been declared a public road or taken over by the county.
"It is now, therefore, ordered by the board that a public road be and hereby is located and shall be maintained from the old Kinston-LaGrange public road to Waters' mills, and that in the judgment of this board the same will be advantageous to the public, and such is found to be a fact. It is further ordered that the said road so located be taken over, established and maintained by the county for the benefit of the public as a branch or neighborhood road under the terms of the special local act of the Legislature of North Carolina applicable to Lenoir County, and to that end that the width of said road shall be 24 feet. That the same shall be located along the line of the present location of the road across the land of W.N. Parks, but that such location may be shortened or straightened under the direction of this board. That the present road as now located shall remain open as a public road until the relocation, straightening and shortening of said road shall take place under the terms of this order, said board finding that such is necessary and advantageous to the public.
"It is further ordered that R.R. Rouse be authorized and directed to proceed under the terms of this order to lay out and locate said road, and to keep open the present road as now located until the final relocation, straightening and shortening of the said road may be made, and the said Rouse is authorized to take the matter up with W.N. Parks on behalf of this board, and to otherwise carry out the terms of this order, and report his action hereunder to this board.
"It is further ordered that all the rights of W.N. Parks for any damage to which he is entitled shall be reserved, and he is allowed to file his claim as is provided by law in the special local act applicable to Lenoir County. *Page 493 
"A copy of this order will be delivered to W. N. Parks by said Commissioner R. R. Rouse."
That the resolution was irregular and not in compliance with the statute. That, pursuant to the resolution, R. R. Rouse, one of the defendants, went upon the land of plaintiffs and attempted to locate, establish and open a road across the lands of plaintiffs and across the land that had on it growing crops. That the road attempted to be located traversed a distance of more than three times the nearest distance from the said public road to the bridge at the millpond. That the distance from the said public road to the bridge at the millpond does not exceed 300 yards, and goes through woodland, not in cultivation — high, dry land — and land on which a road could be easily and conveniently constructed. That there is already a well-defined woods path leading from the public road to the bridge near the millpond, and the construction of a road through the woods will occasion no damage to any one.
The plaintiffs further allege:
"That the defendant by its act has attempted to convert the lands of the plaintiffs to its own use, without notice and without hearing.
"That Mr. H. E. Moseley, chairman of the board of county commissioners, had assured, some time previous to 9 July, the plaintiff, W.N. Parks, that the board would give him proper hearing before any action was taken in regard to the location of this road.
"That the road to the said millpond is, and would be, used mainly by children of irresponsible age and by insolvent people, they using it for the purpose of enjoying the water of the millpond; that these heretofore have occasioned considerable damage to the crops and lands of these plaintiffs, and for that reason these plaintiffs have been compelled to stop passage over this path.
"That the location of this road as attempted to be located, through the cleared land of these plaintiffs, would work unnecessary and irreparable damage to the lands of these plaintiffs."
Wherefore, these plaintiffs pray:
"1. That the defendants and each of them, their agents and employees, be restrained and enjoined from locating or attempting to locate the said road across the cultivated land of these plaintiffs, as provided in the resolution of the Board of County Commissioners of Lenoir County.
"2. That defendants, and each of them, be ordered to appear and show cause why this restraining order should not be made permanent."
The complaint was duly verified, and Judge F. A. Daniels issued a restraining order citing the defendants to appear before Judge H.A. *Page 494 
Grady at Clinton, 24 July, 1923, to show cause why the restraining order should not be made permanent.
The defendants, in their answer, deny that the individual members of the board of county commissioners are proper or necessary parties. It is not denied that the plaintiffs or any one of them is the owner of certain lands referred to in this action across which a roadway to Waters' mill is now, and had for some time in the past been, located, at present a distance of 700 yards across said land, and when straightened or relocated under the order it will be a distance of about 450 yards across said land.
They admit that a portion of the land is under cultivation. They allege the true facts in reference to the new road to be "that Waters' mill and millpond is situated on the north side of the present paved State highway from Kinston to Goldsboro, and that between the said paved highway and the said millpond runs an old sand-clay public road from Kinston to LaGrange, and that in order for travelers to reach said mill and millpond from said two above-mentioned public roads they must travel across the lands of various persons, including the land of the plaintiff, unless they go a very indirect and circuitous route, and could only then reach said millpond from a roadway which is not a public roadway, and which, even if it was a public roadway, would cause great inconvenience for the vast majority of the public who desire to go to and from the said millpond. It is expressly denied that the said millpond is situated on any public road or path, it being situated only upon a private path or way, which should not be adopted by the authorities of Lenoir County as the only public way to said mill, and which has not been adopted as a public road or way by the defendants, in their judgment and discretion, which they are authorized to exercise under the law.
Defendants further allege "That the said millpond has been developed into a public summer resort and bathing place, and has for years been used as a public grist-mill, and that the vast majority of its patrons and the public who desire to go to said mill and have business thereat come from the LaGrange section, from Kinston, LaGrange and other points along the paved highway aforesaid, and along the old sand-clay road above mentioned, and that at present hundreds of persons daily go to said Waters' pond, the number being larger on holidays and week-ends. That for thirty years in the past, continuously, a road has gone across the lands of the plaintiffs and others, with their entire consent, connecting Waters' millpond with both of the above-mentioned public roads, and for the past ten years said road across plaintiffs' land has been located just as it is now located, and has been thus used, without any objection whatsoever on the part of the plaintiffs. It is admitted that *Page 495 
at a regular adjourned meeting of the Board of County Commissioners of Lenoir County, duly held on Monday, 9 July, 1923, a petition was presented, requesting that a public road be laid off and adopted from the LaGrange-Kinston Highway to Waters' millpond, to the end that the urgent needs of the public might be properly met, and because the said road which has been used for years had never theretofore been taken over as a public road, but had merely been used by the public without objection, and by the consent of the property owners, including the plaintiffs; and, pursuant to said petition, the matter having theretofore been carefully examined by the said board, an order was duly and unanimously passed, under and in accordance with the authority vested in said board by the special acts of the Legislature of North Carolina, constituting road laws of said county, and appearing in chapter 259, Public Laws 1907, and chapter 46, Public Laws 1913, and a copy of said order was forthwith delivered to plaintiffs. That all things as contemplated by law applicable were duly considered and done by the defendant board, and a copy of the action so taken is the resolution that is set forth in plaintiffs' complaint. That, further, said board, in its said action, exercised the authority vested in it by law in the utmost good faith, which was based upon the necessities and advantages of the whole public. It was admitted that R. R. Rouse, under authority of the board, went upon the land to carry out the order of the board.
The answer further alleges that, by some means unknown to the defendant, a large quantity of nails were concealed in the road, which the defendant is advised, informed and believes, and so avers, did serious injury to the automobiles of those who entered said road.
It is further alleged that the said road connecting the two aforesaid public roads with Waters' millpond, as now located, have been used without objection for the past ten years, but that the location of the public road as contemplated in the aforesaid order has not yet been determined, but that, in accordance with said order, the said present road is to remain open as a public road until the relocation, straightening and shortening of the said road shall take place under the terms of said order. That the action of the said board has at all times been for the purposed of meeting its duty to the public, and that it has acted in good faith.
The defendants ask judgment:
"1. That the temporary order hereinbefore entered be vacated," etc.
On the hearing the plaintiffs presented a petition, signed by 113 persons, as follows: "We, the undersigned citizens of Lenoir and Wayne counties, being familiar with the location and condition of the road leading to Waters' millpond, recommend that the road be not located through the cleared land of W. N. Parks and through the cleared land *Page 496 
of J. E. Jones. We are fully satisfied that the convenience of the public will be served by the location of this road through the woodland of W. N. Parks and J. E. Jones to Waters' millpond."
The defendants presented a petition, signed by 285 persons, as follows: "We, the undersigned citizens of Lenoir County, realizing the importance, convenience and need of a public road from the LaGrange-Kinston Highway to Waters' millpond, do hereby petition the county commissioners of Lenoir County to open and construct a public road from said highway to said pond."
Numerous affidavits were presented to the court, on the hearing by plaintiffs and defendants, sustaining their respective contentions. An affidavit, signed by 20 persons, alleged that the road through the cleared land of plaintiffs and others to the millpond, is 773 yards farther than through the woodland of plaintiffs, and others, to the old Kinston and Jason Road.
The judgment rendered on the hearing is as follows:
"This cause coming on to be heard before me, Henry A. Grady, resident judge of the Sixth Judicial District, this 24 July, 1923, upon the motion of the plaintiffs to continue the restraining order issued herein by Hon. Frank. A. Daniels, and returnable before me this day; and it appearing to the court, from an inspection of the record and exhibits filed, that the board of commissioners have made an order providing for the laying out of a public road across the lands of the plaintiffs; and the court being of the opinion that said matter lies entirely within the discretion of said board of commissioners and is not subject to review by the court, and there being no allegation in the complaint that said board of commissioners has abused the discretion reposed in it by law, it is, therefore, ordered and adjudged that the restraining order heretofore issued in this cause be, and the same is hereby, vacated and dissolved; and said board of commissioners will proceed under the resolution referred to in the pleadings.
"It is further ordered that said board of commissioners be permitted to proceed to use the old path or cartway, referred to in the pleadings, as a public road; but, as to the relocation of said road, or widening the same, said board will defer action until the rights of the plaintiffs can be passed upon by the Supreme Court."
A further order was made, that the plaintiff W. N. Parks be restrained and enjoined from interfering with the use of the road as now located, etc.
The above are all the material facts necessary for a proper understanding of the case.
The defendants contend that the order of the board of county commissioners was "in accordance with the authority vested in said board by the special acts of the Legislature of North Carolina, constituting road laws for said county, and appearing in chapter 259, Public Laws 1907, and chapter 46, Public Laws 1913." The reference to chapter 46, Public Laws 1913, should be, and was intended to be, "Public-Local Laws of North Carolina, Session 1913." It will be noted that the repealing clause in the 1913 acts says: "That chapter 259 of the Public Laws of 1907 and all the laws and clauses of law in conflict with this act are hereby repealed."
The road acts, before mentioned, and the subsequent road acts for Lenoir County, were intended to make a more efficient system of roads for the county, better maintenance and more permanent construction. Chapter 391, Public-Local Laws 1919 (repeals chapter 46, Public-Local Laws 1913 and amendatory acts "only in so far as the same are modified by and inconsistent with this act") provided for a $2,000,000 bond issue to be voted by the people, and created a highway commission for the purpose of expending this money "for the purpose of building and constructing its public roads, highways and thoroughfares of durable materials and in permanent manner," etc. This highway commission was to exist until the proceeds of the sale of the bonds, etc., under the act were expended in building hard-surfaced and dependable roads and permanent bridges. The people voted for these bonds, and Public-Local Laws, chapter 119, Laws 1921, and chapter 24, Extra Session 1921, validated and legalized the issue to cure certain irregularities, and for other purposes. Public-Local Laws, chapter 466, Laws 1921, designated the hard-surfaced roads to be constructed. Chapter 458 provided certain districts, five, and each to select a county commissioner. Lenoir County, from these constructive acts, was one of the forerunners of hard-surfaced, durable county roads and maintenance of same in North Carolina.
From a careful examination of the road acts of Lenoir County, the only authority we can find for locating new roads is set forth in Public-Local Laws 1913, ch. 46, sec. 13, which is as follows:
"That, subject to the approval of the said board, the county superintendent of roads and the patrol supervisor are hereby empowered to locate or change any part of the public roads of Lenoir County, when in their opinion the same would be advantageous to the public; and when any person or persons on whose land the new road or a part thereof is to be located claims damages therefor, and within sixty days files a petition before, the said board asking for a jury to assess such damages, the said board, within not less than twenty days nor more than sixty days after the completion of the said road, shall order a jury of three *Page 498 
disinterested freeholders to be summoned by the sheriff or constable as provided by law, who shall give said landowner, or his local representatives, forty-eight hours notice of the time and place when and where the said jury will meet to assess the damages; and the said jury, being duly sworn, in considering the question of damages shall also take into consideration the benefit to the owner of the land, and if such benefit shall be considered equal to or greater than the damages sustained, then the jury shall so declare, and shall in any event report in writing its findings to the board of commissioners for revision or confirmation:Provided, that if the said landowners be nonresidents of the county and have no local representative, it shall be deemed sufficient service of such notice for the sheriff or constable to forward by mail a written notice of the purpose, time, and place of such meeting of said jury to the last known post-office address of such landowner seven days in advance of such meeting, and also to post a notice for seven days at the courthouse door in said county."
This section provides a method of locating new roads. The method provided must be substantially followed.
"Where the owner of land seeks to recover damages for the injury resulting from the locating of a railroad on his land, he must pursue the remedy prescribed by the charter of the railroad company, as this statutory provision takes away by implication the common-law remedy by action of trespass on the case." McIntire v. R. R., 67 N.C. 278. See S. v. Lyle,100 N.C. 503; R. R. v. McCaskill, 94 N.C. 746; Allen v. R. R., 102 N.C. 381. Where the Legislature has prescribed a method of procedure, the statute on the subject must ordinarily be followed. Proctor v. Comrs.,182 N.C. 59.
"It is the accepted principle, declared and upheld in numerous decisions with us, that courts may not interfere in a given case with the exercise of discretionary powers conferred on these local administrative boards for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion." Lee v.Waynesville, 184 N.C. 568, citing Dula v. School Trustees,177 N.C. 426-431; Crotts v. Winston-Salem, 170 N.C. 24;Newton v. School Committee, 158 N.C. 186-188; Jeffress v. Greenville,154 N.C. 490; Rosenthal v. Goldsboro, 149 N.C. 128; Small v. Edenton,146 N.C. 527; Ward v. Comrs., 146 N.C. 534; Durham v. Rigsbee,141 N.C. 128; Tate v. Greensboro, 114 N.C. 392; Brodnax v. Groom,64 N.C. 244. See, also, Cotton Mills v. Comrs., 184 N.C. 227, andEdwards v. Comrs., 170 N.C. 448.
From a careful reading of section 13 of the Road Act, supra, the method to locate any road in Lenoir County is as follows:
(1) The county superintendent of roads and the patrol supervisor are empowered to locate the public road, when in their opinion the same *Page 499 
would be advantageous to the public. A report to this effect should be made to the Board of County Commissioners of Lenoir County. The commissioners can approve or disapprove the location. If the location is approved, then,
(2) The person or persons on whose land the new road, or a part thereof, is to be located claims damages therefor shall, within 60 days, file a petition before the said board asking for a jury to assess such damages. After the completion of the road, the board shall order a jury, etc. The board shall then proceed, as set forth in said section, and act.
We think the method provided in the act requires no notice to the landowner when the road is first located. The county superintendent of roads and the patrol supervisor have the power to locate the public road (subject to the approval or disapproval of the board of county commissioners), or to take a surveyor, or other person or persons, if they see fit, and do what is necessary for the purpose of locating the road. The going on the land by the employed agents of the county and locating the road is sufficient notice. It can hardly be conceived that in public matters of this kind those who are clothed with authority should not in this, and all other public matters, act with courtesy in carrying out the governmental right. It is frequently a perplexing problem to tell how far the individual has to yield his personal and property rights for the common good. Sometimes in carrying out the idea of the "greatest good to the greatest number," when it strikes the individual as to his own personal or property rights being affected, he would rather the application be applied to his neighbor. The taking of private property for public use by paying just compensation is a part of the fundamental right that the legislative branch of the government can grant to a county or other agencies. The present act should be carefully administered as it goes as far as any act of this kind; and, while it makes for efficiency, the individual is affected and his rights should be carefully guarded.
"Notwithstanding there is no clause in the Constitution of North Carolina which expressly prohibits private property from being taken for public use without compensation; and although the clause to that effect in the Constitution of the United States applies only to acts by the United States, and not to the government of the State, S. v. Newsom, 5 Iredell (27 N.C. 250), yet the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina." Johnstonv. Rankin, 70 N.C. 555; S. v. Lyle, 100 N.C. 497.
Under the special statute for Lenoir County the "person or persons on whose land the new road or a part thereof is to be located claims *Page 500 
damages therefor and within 60 days files a petition before the said board asking for a jury to assess such damages." This claim must be made within the statutory time. R. R. v. McCaskill, supra; Dayton v. Asheville,185 N.C. 12.
"On the back of the telegraph blank was the usual requirement that any claim for damages must be presented to the company in writing within sixty days after filing the message. This regulation has been held reasonable and valid in Sherrill v. Tel Co., 109 N.C. 527, and has been often approved since." Bennett v. Tel Co., 168 N.C. 498. The State Highway Act allows 60 days. Road Commission v. State Highway Commission, 185 N.C. 56.
The assessment of damages after the road is located is well settled in this State. McIntire v. R. R., supra; R. R. v. McCaskill, supra; S. v.McIver 88 N.C. 690. Notice need not be given the owner unless required by the statute, as to entry on land — notice must be given as to assessment of damages. S. v. Jones, 139 N.C. 616; Durham v. Rigsbee,141 N.C. 131; Kinston v. Loftin, 149 N.C. 255; Jennings v. Highway Com.,183 N.C. 68; 2d Lewis' Eminent Dom., sec. 66.
The powers that can granted to local governmental agencies unless restrained by constitutional prohibition are broad and comprehensive. The powers when granted should be exercised with care and caution.
"Unless prohibited by the Constitution, the power of the State to appropriate private property to public use extends to every species of property within its territorial jurisdiction, and where a public-local act creates a county highway district and give to it, broadly and without restriction, the right to condemn private property for highway purposes, the power so given will include dwelling-houses, trees and yards of the owner of land lying upon the roadway, unless such power is excluded under general or other State laws applicable." Clifton v. Duplin HighwayCommission, 183 N.C. 211; Gunter v. Town of Sanford, ante, 452.
From the record the statute, Public -Local Laws of 1913, ch. 46 has not been substantially complied with. This cause is remanded to the end that the county superintendent of roads of Lenoir County and the patrol supervisor locate the road as pointed out in this opinion, and the procedure be as herein indicated. That the order in the record signed by the court below restraining and enjoining W. N. Parks continue in force in accordance with the order. That the cost in this cause be equally divided between the parties plaintiff and defendant. As herein modified, judgment is affirmed.
Modified and affirmed. *Page 501