This was an action brought by the plaintiff to recover of the defendants certain taxes paid under protest, and resulted in a recovery by the plaintiff in the amount of $209.15, taxes paid for the year 1937, with interest and costs.
Pertinent facts are as follows:
The plaintiff was the owner of certain lands in Graham County upon which the taxes were levied. On 15 May, 1935, plaintiff executed to the United States of America an option for the purchase of these lands, the said purchase depending upon the approval of the Attorney General of the United States as to the title. It was provided in the option that if the vendors were unable to show an established title, to the satisfaction of the Attorney General, the United States would, if it deemed advisable, institute proceedings for the condemnation of the lands.
The option permitted certain privileges to be exercised upon the lands by the United States pending the exercise of the privilege of purchase, among them that the optionee might enter the lands "for all proper and lawful purposes, including examination of lands, minerals, timber, and other resources," and that, pending the vesting of title of the lands in the United States, the latter, if it elected to do so, might, upon the acceptance of the option, use, occupy, and administer the lands for the purpose of national forests, or the establishment thereof, subject to the limitations and restrictions provided in the option.
On 30 July, 1935, the plaintiff, or its predecessor in title, had notice from the Department of Agriculture of the election to purchase the land under the provisions of the option. After this notification the Lumber Company surrendered the property to the United States of America and exercised no rights thereover except such as were reserved in the option.
On 10 February, 1937, the United States of America began proceedings for the condemnation of the land by filing a petition in the United States District Court for the Western District of North Carolina, at Asheville, and the condemnation proceeded in due form down to the confirmation of the report of the commissioners on 25 June, 1937, and the final decree of the court adjudging the title to be divested from this plaintiff (respondent in the condemnation proceedings), and vested in the United States of America, on 25 August, 1937.
Under the assumption that the lands in question were not subject to the county tax as property of the plaintiff, because of the option and the *Page 169 
pendency of the condemnation proceedings referred to, the plaintiff refused to list the lands for taxation during the year 1937; and, upon such failure, the lands were listed by the county authorities, as provided in the Machinery Act, and the taxes assessed. The plaintiff paid the taxes under protest, demanded the return thereof in apt time, and, upon failure of the defendants to make refund within the ninety days provided by the statute, brought this suit for their recovery.
The Machinery Act, chapter 291, Public Laws of 1937, governing the listing and appraisal of property and the levy and collection of taxes, contains the following provisions:
"Section 701. Except as hereinafter specified, real property shall be listed in the name of the owner; and it shall be the duty of the owner to list the same." (The situation with which we are dealing does not come within the exception.)
"Section 1401. Date as of Which Lien Attaches. The lien of taxes levied on property and polls listed pursuant to this act shall attach to real estate as of the day as of which property is listed, regardless of the time at which liability for the tax may arise or the exact amount thereof be determined."
"Section 302. Date as of Which Assessment Is to Be Made. All property, real and personal, shall be listed, or listed and assessed, as the case may be, in accordance with ownership and value as of the first day of April, one thousand nine hundred and thirty-seven, and thereafter all property shall be listed or listed and assessed in accordance with ownership and value as of the first day of April of each year."
Obviously section 1401, fixing the attachment of the lien as of April first, has reference to S. v. Fibre Co., 204 N.C. 295, 168 S.E. 207, cited in defendants' brief, in which it was held that the date on which the lien attached was "when the taxes become due," that is, the first Monday in October of the year in which they are levied, while liability for the tax was held to arise on the first day of the fiscal year — 1 July. Therefore, a brief reference to S. v. Fibre Co., supra, becomes pertinent.
In fixing the date of the attachment of the lien, the opinion in that case was not advertent to the fact that the statute itself, C. S., 7987 (see Michie's Code, same section), fixed the time at which the lien attached as the first day of June. This is recognized and approved by the Court in Bryan v. Craven County, 204 N.C. 729, 733, 169 S.E. 625, filed a little later and printed in the same volume. Apparently both the date for the attachment of the lien and that of the liability for the tax stated *Page 170 
in S. v. Fibre Co., supra, came about through an inadvertent blending of the Machinery Act, which pertains to property taxes exclusively, with the current Revenue Act, which provides principally for the taxation of privileges, and fixes the period during which they may be exercised under the license granted. The provisions of the latter act were thus incorporated into the former, although the two acts are separate and distinct, and relate to different subjects.
The tax on property is a visitational tax, and is the taking of a part of the taxpayer's wealth, represented by the property he owns, for the needs of Government. Under our present statute it is taken as a percentage of the ascertained value "according to ownership," as of the day of the visitation — 1 April. It is not an excise tax for the privilege of owning property for the period of the fiscal year, or any other period.
Logically, therefore, the liability for the tax arises on the day the lien attaches to the property, and on the day the taxpayer is found to be in ownership thereof — 1 April — and we so hold. The purpose and effect of the statute above quoted was to reinstate the law in this respect as it existed prior to S. v. Fibre Co., supra, here considered.
Since none of the steps taken by the United States Government with respect to the property antedated 1 April (the date we consider the property became subject to the tax, if it did at all), except the taking of the option and the commencement of the condemnation proceeding, the controversy is narrowed down to the question of whether this plaintiff was the owner of the lands upon the first day of April, 1937, within the meaning of the pertinent provisions of the Machinery Act. The plaintiff was such owner unless (1) the giving and acceptance of the option, and the acts of the optionee upon plaintiff's lands, or (2) the commencement of the condemnation proceedings, had divested him of such ownership and vested it in the United States of America. We are of the opinion that neither of these occurrences had that effect.
(1) Neither the option, whether standing alone or fortified by the acts done upon the lands, as set out in the findings of fact, nor the surrender of the lands to the United States Government for the uses to which they were put, in our opinion, had the effect of transferring the ownership to the United States. At all times, in so far as the option is concerned, until actual title to the land was acquired, the United States had the right to withdraw from the situation and leave the lands in the hands of this plaintiff.
(2) Condemnation proceedings in this case were instituted by the United States of America in accordance with the Federal practice which requires that such proceedings shall conform, as nearly as may be, to the procedure provided by law in the State in which they are brought. But at any time between the date of filing the petition on 10 February *Page 171 
and the signing of the final judgment on 25 August, 1937, the petitioner in this case had the power to withdraw from the situation at will, and to decline to take the property. If, then, the ownership of this property was vested in the United States on the first day of April, it must have been constructively so, by operation of some principle or policy of law of such superior dignity as to require recognition in spite of the actual facts and contrary to the implications of the statute — C. S., 1723. The plaintiff contends there is such a principle under the laws of this State, and cites as controlling authority S. v. Floyd and S. v. Queen,204 N.C. 293, quoting from this opinion the following:
"For compensation purposes the commencement of the proceeding marks the time of the taking. Consequently, the owner of the land cannot recover for any improvement placed thereon or for enhancement thereof due to other causes. The obvious reason for such conclusion is that the first judicial act in the condemnation process is in contemplation of law a setting apart of the property for public use. Therefore, if the proceeding is prosecutedto final conclusion the sovereign is deemed to be the owner from the commencement of the proceeding." (Italics are ours.)
The statute cited provides that the title passes upon the confirmation of the report of the commissioners appointed to appraise the property and assess the damages, and when the award so assessed has been paid into court. Relating to this matter the opinion continues, somewhat inconsistently, we think:
"While the State does not get a fee simple title until the payment of the award, notwithstanding, the status of the landowner and of the property is established when the clerk of the Superior Court, upon exceptions filed, confirmed the report of the commissioner of appraisals."
And again:
"Nor is the fact that the Park Commission, even after final judgment, had the power to decline to take the land, entitled to prevailing significance. Although clothed with such right, the commission did notexercise it, but pursued the proceeding to final conclusion." (Italics are ours.)
The plaintiff relies strongly upon this case to support its present contention that it was not the owner of the lands on the first day of April and is not liable for the tax.
It may be conceded that the condemnation proceeding under consideration by the Court in that case (chapter 48, Public Laws of 1927, and acts amendatory thereof), is sufficiently similar to that here considered to justify the application of S. v. Floyd, supra, if the Court were inclined to follow it. We think that without disturbing the result reached in that case, the principle upon which it was predicated should be *Page 172 
reconsidered. However convenient it may be in other relations to refer a change in ownership to the filing of the petition as the date of the taking, such an interpretation not only contravenes the express terms of the statute under consideration, but it has no regard to the exigencies of the laws pertaining to taxation, or to the definition of ownership, in relation to tax liability, to which we feel compelled to adhere.
In Land Co. v. Commissioners, 174 N.C. 634, 94 S.E. 406, the Court gave the following definition of "owner" as within the meaning of a similar provision of the Machinery Act:
"By the owner is meant the person who has the legal right or estate to or in the land and not the one who by contract or otherwise has a mere equity thereon or a right to compel a conveyance of such legal title or estate to himself."
Since, under chapter 221, Public Laws of 1927, and amendments thereto (Michie's 1935 Code, section 8037, et seq.), the State, or county, as the case may be, must finally depend for the collection of its taxes upon a foreclosure suit operating upon the title to the property, there is a fundamental reason for maintaining the integrity of this definition.
Where the statute itself is silent on the point, the theory that the "taking" of the land in a condemnation proceeding occurs the day the petition is filed may be regarded as a fiction of law commonly employed to fix the date as of which the value shall be ascertained for purposes of compensation. The opinions cited in the Floyd case, supra, as supporting are all addressed to that feature of condemnation. The further application of the principle as fixing the ownership of the property for purposes of taxation is unnecessary and impracticable. Under it, ownership must be determined on the principle of "relating back" in case title is finally taken — a matter easily determined after the event, but unpredictable on the first day of April, when the property must be listed "according to ownership." No provision is made in the statute for postponement of the mandatory duties of officers and boards, nor does it make any provision for readjustment in case a wrong guess is made about the ownership.
There are, as we have before suggested, many statutes in the several states, and also in this State, under which the right of eminent domain may be exercised. In some of these, immediate appropriation and entry may be had by the petitioner. Such provisions are sometimes found in the charters of municipalities and public utilities and in statutes relating to the acquisition of easements for highways and streets. But under the statute relied on in this proceeding, not only is the entry of petitioner into the lands for purposes other than that specifically granted by the statute not contemplated, but it is contrary to law. S. v. Wells, 142 N.C. 590,55 S.E. 210. Where the right of entry before confirmation *Page 173 
of the report of the commissioners and payment of award exists, it must be expressly conferred by the statute. S. v. Jones, 139 N.C. 613, 631,52 S.E. 240; S. v. Jones, 170 N.C. 753, 87 S.E. 235; R. R. v. Ferguson,169 N.C. 70, 85 S.E. 156; S. v. Lyle, 100 N.C. 497, 6 S.E. 379. The fact that under this law the supposed owner could not exercise any of the rights of ownership at the critical date is sufficient, we think, to demonstrate the unreality of such ownership.
On examination of S. v. Floyd, supra, it will be found that it was unnecessary to a decision of the case to hold that the petitioner was the owner of the lands at the time of filing the petition, since the report of the commissioners had been confirmed and the award had been paid into court before the lands became chargeable with the tax. Without questioning the propriety of the result, S. v. Floyd, supra, is disapproved in so far as it expresses a view contrary to the conclusion we have reached in the case at bar.
The lands described were properly listed to the plaintiff as owner on the first day of April, 1937, and became chargeable with the tax in its hands, and plaintiff had no right to recover the tax paid by it under protest.
In some respects the record in this case presents anomalies. The plaintiff complains only for a return of the 1937 taxes paid under protest, and the answer is addressed to such claim; but the thirteenth finding of fact, made upon what evidence we are unable to say, is as follows:
"That for the year 1936 the defendant, Graham County, listed the said lands against the plaintiff, Bemis Hardwood Lumber Company, and assessed taxes thereon at a valuation of $ ________ and levied a rate of $ _____ per hundred, amounting to $300.15."
The following paragraphs of the findings obviously relate to the taxes of 1937, alleged to have been paid under protest. It was the evident intention of the court to deduct $10.00 from the total levied taxes of $300.15, because of the taxability of certain rights reserved by the plaintiff, and again we cannot allocate this finding to any evidence in the cause as fixing a liability for $10.00 tax. Instead, however, of deducting $10.00, which would leave $290.15, the recovery was for $209.15.
The judgment itself makes no reference to the taxes of 1936. The plaintiff excepted to the judgment and gave notice of appeal, but made no assignments of error and no reference to the appeal in its brief.
In order that there may be no misunderstanding of the matter, however, we hold that on the foregoing reasoning and authority the lands in question were chargeable with the 1936 taxes, and the plaintiff is entitled to no relief in that respect.
The judgment is
Reversed. *Page 174