CAROLINE V. LUTON v. J. S. WILCOX, Adm'r, and others.

*Guardian and Ward—Estoppel—Res Adjudicata—Negligence— Burden of Proof.*

1. Where permission is given to a guardian by the judge of probate to file an *ex parte* final account and turn over his guardianship to another, he is not thereby discharged from liabilities connected with his trust and arising before such resignation. He is still bound to account with the ward or the succeeding guardian when so required.

2. A, being appointed guardian, compromises certain debts due his wards at considerably less than their nominal value. Afterwards, by permission of the probate judge, he turns over his guardianship to B. A accounts with B, pays over the amount received from the compromise and takes a receipt in full. Thereafter B resigns the guardianship in favor of one C, who sues B and his sureties and recovers judgment against them *for the amount paid over by A to B*, and no more, which judgment is not collectible by reason of the insolvency of the defendants. In a suit brought by the wards on coming of age on the bonds

of A, the first guardian, for alleged negligence in making said compromise, *held:*

(1) That neither the *ex parte* settlement of A with the clerk, nor the receipt given by B, nor the judgment in the suit against B's bond, precludes inquiry into the propriety and good faith of the compromise, and

(2) That the receipt by A of less than the face value of the claims due his ward did not give rise to a presumption of negligence, but that an issue should have been submitted to the jury as to whether or not diligence and good faith were exercised in making the compromise, with instructions to the effect that the burden was on the relator to prove negligence.

(*Covington* v. *Leak*, 67 N. C., 363 : *Freeman* v. *Wilson*, 74 N. C., 368; *Cummings* v. *Mebane*, 63 N. C., 315, cited and approved.)

CIVIL ACTION upon a Guardian Bond, tried at Fall Term, 1879, of PASQUOTANK Superior Court, before *Gudger, J.*

The opinion states the case. Judgment in the court below for plaintiff, appeal by defendants.

*Messrs. Gilliam & Gatling*, and *C. W. Grandy*, for plaintiff.
*Mr. George V. Strong*, for defendants.

DILLARD, J. The defendant, Stanton Meads, was duly appointed guardian to the feme relator in the year 1857, and gave bond. He afterwards executed renewals of his guardian bond as required by law, one in the year 1861, and another in the year 1866, with sureties to each bond, who, with the representatives of such as have died, are made co-defendants with him to this action.

The guardian having in his hands two bonds, one for $1,320 on J. B. Shaw and T. D. Pendleton, and the other for $1,530 on William Pailin, John Pailin and Joseph Pailin, both belonging to his ward, placed the same in 1866 in the hands of C. C. Pool, as an attorney at law, for collection, and in November, 1867, the guardian compromised both of the debts, receiving twenty-five cents in the dollar on the first

bond, and thirty-three and a third cents in the dollar on the second bond. Afterwards, to-wit, in the year 1869, the said Meads made an *ex parte* statement of his guardian account before the judge of probate, wherein after debiting himself with the aggregate of the two bonds aforesaid, he took a credit for the amount lost by the compromise, and thus reduced the estate of his ward down to the sum of a thousand dollars, or thereabouts; and thereupon he was allowed to resign his guardianship, and C. C. Pool, the attorney, was appointed and qualified as his successor.

Upon the appointment of Pool as guardian, he receipted Meads for the sums received by way of compromise on the two bonds aforesaid, amounting, with interest added, to the sum of $1,009.29, as in full of the amount due from him as the former guardian of his ward, and he continued to be the guardian until 1873, when he also was permitted to resign and one Cartwright was appointed his successor. Pool having failed to account with and pay over the funds of his ward, Cartwright instituted suit on his bond, and at fall term, 1874, recovered judgment against him and his sureties for the amount (with interest) paid over to him by Meads, and for nothing more; and of this recovery nothing has been collected, or can be.

This action is brought by the feme relator on the three bonds of Meads, the first guardian, with the view to make him and his sureties responsible for the mismanagement of her estate in compromising with those who had her funds in their hands, and the positions are taken in defence: first, that the acceptance by Pool from Meads of the sum realized by the compromise discharged him and shifted the burden on Pool and his sureties; and secondly, that the suit of Cartwright, the last guardian, against Pool and his sureties included the same matter, and that the judgment and recovery therein are *res adjudicata* and conclude the relator from again litigating for the same thing in this action.

In opposition to the defences set up by defendants, the plaintiff replies, insisting on the insufficiency of the matters pleaded in bar, and alleging that the parties compromised with were entirely solvent and able to pay the whole of their debts; that this fact was well known and that they could have been made to pay the entire sum due, if Meads, the guardian, had exercised *bona fides* and ordinary prudence in and about the business of his wards.

On the trial, His Honor reserving the questions of law involved in the defences aforesaid, submitted an issue to the jury as to the solvency of the obligors at the time of the compromise; and the jury having responded that they were " good for fifty cents in the dollar," the court overruled the defences relied on and rendered judgment against the defendants for the difference between the sum received on the compromise and what the jury found the bonds to have been worth. And from this judgment the appeal is taken.

Upon this appeal, the question for our determination is as to the legal sufficiency of the several matters relied on in the answer, to constitute a bar to the maintenance of this action.

By express provision of the statute law, the judge of probate may accept the resignation of a guardian and discharge him, if he shall exhibit his account for settlement, and the judge of probate is satisfied that he has been faithful and has truly accounted, and a competent person can be got to succeed him. But such resignation is authorized with a *continuing liability* in relation to all matters connected with the trust before the resignation. Bat. Rev., ch. 53, § 45.

In accordance with this statute, Meads exhibited his account, (a copy of which comes up to this court as a part of the record) debiting himself with the two bonds of the ward and taking a credit therein for the loss by the compromise, and the same was accepted and filed, and thereupon Pool was appointed and qualified as his successor. In this state

of things, if any liability was incurred by Meads by reason of the compromise, it was the duty of Pool to assert it by action or otherwise; and in case of his default, then the ward had a cause of action against Meads for *his* breach of duty, and also against Pool for his omission to make him responsible therefor. *Harris* v. *Harrison,* 78 N. C., 202. This liability on the part of Meads was not enforced by Pool, but on the contrary, it appears from a comparison of his receipt to Meads with the account settled with the probate judge at the resignation of Meads, and also from the statement of the case of appeal, that the only sum accounted for and paid over to Pool was the amount received on the compromise. If this be so, then, as no accountability for this matter was enforced against Meads, the liability to answer for the alleged breach, if any there was, still continues, and no bar exists to the prosecution of the present action by the ward herself.

The other point made and ruled against defendants in the court below, was, that on the resignation of Pool, Cartwright, who succeeded him in the guardianship, brought suit on the guardian bond of said Pool for an account and payment over of the funds of the ward, and that the loss by the compromise, which is the ground and scope of the present suit, was passed upon and adjudged in that action, and that the legal effect of the judgment therein is to conclude the relator from drawing the same matter into litigation again.

The judgment recovered was between different parties from the present action and the amount thereof is uncollectible by reason of the insolvency of Pool and his sureties. Even if it included accountability for the matters, for which this action is brought, it surely can not be that a fruitless judgment against Pool, the second guardian, will defeat the ward's suit on the bond of Meads who committed the breach of duty complained of and whose liability is expressly con-

tinued, notwithstanding the acceptance of his resignation as guardian.  Bat. Rev., ch. 53, § 45.

But the judgment pleaded, if otherwise a good bar, is unavailing, for the reason that it is not shown that the same matter was therein drawn into issue and passed upon.  The defendants, on whom it was incumbent to make the proof, do not set out the record of the former action, so that this court can see what was in issue.  They merely send up as a part of the case of appeal an extract from the complaint in these words, "that C. C. Pool reduced into his possession all the estate of his ward, to the amount of fifteen hundred dollars, or some large sum, shortly after he qualified as guardian."  From this form of allegation it is obvious that the failure of Pool to hold Meads responsible for the loss on the compromise, was not specially assigned as a breach of his bond, but on the contrary the ground of the action was confined to a recovery for what he *had received* from Meads and did not extend to what he *ought to have received.*  And in exact consistency with the import of the record, so far as furnished, it is stated in the case of appeal by the judge, that on the former action the recovery was had for the amount received by Pool from Meads, and no more; and that there was no reference in the pleadings, or on the trial to the loss sustained by the ward by the compromise now complained of.

We, therefore, hold that accountability for the sum sought to be recovered in this action was not a matter in issue, and passed upon in the former action of Cartwright against Pool, and that the defence of *res adjudicata* was properly overruled by the court below.

Having seen that the defences urged by defendants are untenable in law, it remains to consider what judgment should have been rendered upon the facts found.

His Honor submitted only one issue to the jury, and that was as to the solvency of the two bonds of the ward at the

time of the compromise, and to that the jury responded that "they were good for fifty cents in the dollar." No issue was put to the jury as to the allegation of a knowledge on the part of Meads of the solvency of the debtors to the ward, equal to the payment of a larger sum than he received, and of his failure to exercise due diligence to secure or collect the whole. So we have no fact in the record on which the legal conclusion of negligence rests, except that the bonds at the date of the compromise were worth fifty cents in the dollar. Does that fact alone warrant the legal inference of negligence?

The rule of diligence established by the decided cases is, that a guardian in the management of his ward's estate must act in good faith, and with that care and judgment that a man of ordinary prudence exercises in his own affairs. *Covington* v. *Leak*, 67 N. C., 363; *Freeman* v. *Wilson*, 74 N. C., 369; *Cummings* v. *Mebane*, 63 N. C., 315.

No fraud is imputed to Meads in the making of the compromise, but it is alleged he did not employ that skill, attention and judgment in the ward's behalf which a prudent man would have bestowed in his own affairs under the same circumstances. The guardian received twenty-five cents in the dollar on one of the bonds, and thirty-three and one-third cents in the dollar on the other, when they were good, as the jury find, for fifty cents in the dollar. The worth of the notes, as found by the jury, should have been received, if by the exercise of ordinary prudence it might have been; the guardian, however, accepted a compromise at a less sum and surrendered up the ward's notes.

The presumption being, as to the matter of the compromise, in favor of the guardian, the burden of proof of negligence was on the relator, and it seems to us that an issue should have been submitted to the jury involving inquiry whether the compromise made at a less sum than the obligors were able to pay, was made in the exercise of ordinary

attention and an honest judgment about the ward's affairs, having regard to the number bound for each bond, their then ability to recover the debts and their prospects of future ability to pay the whole.

Without some further inquiry as to the due diligence of the guardian, we think the legal inference of negligence did not arise upon the fact found by the jury, and the judgment of the court is therefore erroneous.

The judgment of the court must be reversed, and it is so ordered, and this will be certified to the end that a new trial be had in conformity to the ruling of this court.

Error.                                        *Venire de novo.*