W. H. PROCTOR ET AL. v. BOARD OF COMMISSIONERS OF NASH COUNTY ET AL.

(Filed 21 September, 1921.)

**School Districts—Bonds—Statutes—Sinking Fund—Taxation.**

Where a statute authorizes a school district to issue bonds for school purposes, and requires that a sinking fund at a certain rate of taxation be provided for the retirement of the bonds at maturity, and the taxable property in the district is not sufficient to pay the interest and provide an adequate sinking fund, the retirement of these bonds is as vital to their validity as the authorization to issue them, and their issuance will be permanently enjoined at the suit of a taxpayer within the district. In this case the bonds had not been issued and the rights of purchasers had not intervened.

APPEAL by plaintiffs from *Connor, J.,* at chambers, 1 July, 1921, from NASH.

Civil action to determine the validity of certain proposed bonds. The facts are set out in the judgment of the Superior Court, which is as follows:

"This is a civil action wherein the plaintiffs are seeking a permanent injunction against the defendants against the issuance and sale of certain school improvement bonds of Oak Level School District, Nash County, North Carolina. A temporary restraining order was issued against the defendants by *Bond, J.,* August 20, 1919, and notice issued to the defendants to appear before *Devin, J.,* at Nashville, 28 August, 1919, and show cause why said injunction should not be granted. The hearing thereof was continued from time to time without final disposition, and the same now comes on to be heard on 1 July, 1921, before his Honor, George W. Connor, resident judge of the Second Judicial District, in chambers at Wilson, N. C., upon motion of the defendants to dissolve the temporary restraining order herein issued. After hearing the complaint and answer and the affidavits in the cause and the argument of counsel, it appears to the court, and the court finds as a fact:

"1. That on or about 7 April, 1919, the county board of education of

Nash County filed with the board of county commissioners of Nash County a petition for an election within Oak Level School District in Nash County upon the question of issuing $20,000 of school improvement bonds for the purpose of building a schoolhouse in said district, as provided by ch. 55 of the Public Laws of 1915 of North Carolina, and the said board of county commissioners thereupon ordered an election to be held in said school district for said purpose on 22 July, 1919.

"2. That said election was held as in said order and notice of election directed, 22 July, 1919, and was declared carried; that the registration books were closed 10 July, whereas they should have remained open until Saturday night, 12 July; that between 10 July and 12 July, 1919, J. B. Wallace and W. J. Bunn, qualified voters of said district, were refused registration by the registrar.

"3. That there is no public high school maintained in said district.

"4. That there is a community in said school district consisting of two stores and several residences known as Westrays; that by chapter 39 of the Private Laws of the Special Session of 1908, the territory embracing said community, known as Westrays, was incorporated under the name of the town of Westrays; that by said act John C. Lindsay was designated as mayor, M. J. Hedrick, J. B. Land and J. S. Proctor as commissioners; that the said John C. Lindsay, J. B. Land and J. S. Proctor have each long since moved from the territory embraced within said act, and M. J. Hedrick never lived within said territory, and that said town has not for the past ten years elected any officers or employees, levied any taxes, or performed any other duty or exercised any other privilege usually performed or exercised by towns; that said community has had no board of aldermen, nor other body, has held no election or meeting or kept any minutes or records of same and in no way held itself out to the public as a town, and has in no manner functioned or attempted to function as such.

"5. That the total taxable property in said district for the year 1919 was $476,549, and the total number of polls was 177, and that the total amount of taxes that could be raised by the levy of the maximum amount permitted by said chapter 55, Public Laws of 1915, as limited by chapter 84, section 3, Public Laws of 1919, is $1,718.13, which amount is insufficient to create a sinking fund for the retirement of said bonds at maturity and pay the interest thereon.

"And upon the foregoing findings of fact the court is of the opinion:

"1. That the irregularities, if any, in calling and holding said election and in the registration of voters were cured by the provision of chapter 133, Public Laws of 1921, and that there was not a sufficient number of voters refused registration to affect the result of said election.

"2. That the community designated as the town of Westrays, within said territory of Oak Level School District, is an incorporated town within the meaning and purpose of chapter 55 of Public Laws of 1915.

"3. That the amount of taxable property within said district and the maximum amount of tax that can be raised thereon under the statute does not affect the validity of said bonds, but only affects their marketability.

"Whereupon, it is ordered and adjudged by the court that the said temporary restraining order herein issued be and the same is hereby dissolved. It is further ordered that the plaintiffs pay the cost of this proceeding, to be taxed by the clerk of the Superior Court of Nash County.                                   "GEORGE W. CONNOR,

"*Resident Judge,*" etc.

From the foregoing judgment the plaintiffs excepted and appealed.

*M. V. Barnhill for plaintiffs.*
*Finch & Vaughn, and Thorne & Thorne for defendants.*

STACY, J. This case presents for consideration the old but ever new question of taxation. It comes in the form of a proposed bond issue, and we are asked to pass upon the validity or legality of the same.

The following are the objective and controlling facts:

1. By an election held in Oak Level School District, Nash County, N. C., on or about 7 April, 1919, a bond issue of $20,000 for school improvement purposes was approved by a vote of a majority of the qualified voters resident in said district.

2. Chapter 55, Public Laws 1915, provides that, following a favorable election in such district, the county board of commissioners shall issue said bonds, when requested to do so by the county board of education; and further, that said commissioners "shall thereafter levy a sufficient tax (which shall not exceed thirty cents on the one hundred dollars, and ninety cents on the poll) to pay the interest on said bonds and create a sinking fund sufficient to pay the principal and interest on said bonds when they fall due."

3. The total maximum amount of taxes that could be raised from the taxable property in the present district, under the above limitations, is insufficient to create a sinking fund for the retirement of said bonds at maturity and pay the interest thereon, as required by the law of 1915; or, to state it differently, in order to meet the obligations which these bonds will impose, it would be necessary to levy taxes in excess of the statutory limitations.

Upon these, the facts chiefly relevant, the question then arises: Will the law sanction the issuance of these bonds when admittedly, under the tax limitations, they cannot be paid at maturity? We think not.

A similar question was presented in the case of *Bennett v. Commissioners,* 173 N. C., 625, where the defendant commissioners of Rockingham County were sought to be enjoined from issuing bonds in excess of the county's ability to pay under the existing tax limitations. The authority to issue said bonds was denied, the Court saying:

"In view of the constitutional provision, and the decisions of the Court construing the same, we are of opinion that the county commissioners of Rockingham County are without power to incur this indebtedness of $200,000, issue the negotiable bonds of the county in evidence of their obligation, and stipulate for a continuing tax to pay the interest and provide a sinking fund which is in excess of the established limitation," citing *Board of Education v. Comrs.,* 107 N. C., 110; *French v. Comrs.,* 74 N. C., 692; *Millsaps v. Terrell,* 60 Fed., 193.

We do not understand that Art. IX, sec. 3, of our State Constitution is invoked as bearing upon the questions presented by this appeal; or, at least, it does not so appear on the record. But even if such were the case, it has been held with us that where the Legislature has prescribed a method of procedure of this kind, and such procedure is sought to be followed, the statutory provisions on the subject are controlling. *Hendersonville v. Jordan,* 150 N. C., 35; *Comrs. v. Webb,* 148 N. C., 120; *Robinson v. Goldsboro,* 135 N. C., 382. Indeed, in certain instances, the legislative method and the requirements thereof, whether expressed in permissive or mandatory terms, are declared to be exclusive and binding upon those who are chargeable with the execution of such powers. *Ellison v. Williamston,* 152 N. C., 147; *Wadsworth v. Concord,* 133 N. C., 587.

The authorities, of course, may provide for a six months school, as required by the constitutional provision above mentioned, but if they undertake to do so in the manner prescribed by chapter 55, Public Laws 1915, they must comply with the terms of the statute. And it would seem that the statutory method is exclusive where district bonds are sought to be issued for such purpose. However, this latter question is not before us for decision, as the defendants are proceeding under the statute. *Trustees v. Pruden,* 179 N. C., 619.

In *Comrs. v. State Treasurer,* 174 N. C., 141, it was said that "an obligation of this kind imports a liability to taxation, and in case of a subordinate municipal corporation it means that payment can be coerced (if the bonds be valid), and that all the taxable values therein may be made available on the claim." In support of this position, the

following was quoted with approval from *People v. Township Salem,* 20 Mich., 452: "The exercise by a municipal corporation of the power to pledge its credit is an incipient step in the exercise of the power of taxation, and unless the object to be promoted be such as may be provided for by taxation, the power to make the pledge does not exist, and the Legislature cannot confer it." And we may add that, where a bond issue is proposed in excess of the taxing power to care for the payment of said bonds, though for a legitimate purpose, the right to issue the same is not to be found within the pale of the law. The authority to issue bonds, or pledge the faith and loan the credit of a subordinate political subdivision of the State is limited by its ability, under the law, to provide for the ultimate payment of said obligations. This is the point up to which it may be permitted to go, but beyond which the law does not sanction. To hold otherwise would be to assert a legal proposition which, to say the least, is doubtful in morals.

There has been no sale of the present bonds, and the appeal presents no question with respect to the rights of innocent third parties, or purchasers for value without notice. The legality of the issue is raised upon objection by plaintiffs who are residents and property owners in said district.

The case of *Comrs. v. MacDonald,* 148 N. C., 125, is not at variance with the principle here declared, for the chief question there debated and decided was whether a county which had been authorized, with the approval of a popular vote, to issue certain bonds, could levy a tax in excess of the constitutional limitation to provide for their payment, with interest, in the absence of express legislative authority. But it does not appear that such a tax was necessary to meet the obligations incurred by said bonds. The fact was not there established as here admitted. This is made clear from the judgment of the Superior Court as set out in the record of that case, from which the following is taken: "And (the court) being further of the opinion that the said board of commissioners have authority to levy tax sufficient to pay the interest on said bonds, and to provide a sinking fund for the payment of the principal thereof at maturity, and that said board can be compelled by mandamus to levy such tax upon its refusal so to do," etc. The bonds were declared valid, and it does not appear that a levy in excess of the constitutional limitation was necessary to meet payment—the court saying that a tax up to this limit might be compelled by *mandamus,* if need be. This restricted tax seems to have been sufficient. Hence, the crucial point now presented was not decided in *McDonald's case,* nor was it before the Court in *Trustees v. Pruden, supra.* These cases are thus distinguishable.

We are not impressed with the argument or contention that the in-

ability to provide for the payment of said bonds affects only their
marketability and not their validity. The authority to issue the pro-
posed bonds is derived from the statute, and its limitations are equally
as effective and curbing as its enabling provisions are life-giving. There-
fore, where the territory embraced in a given district is too small, under
the limitations of the statute, to provide for the payment of the bonds
in the amount proposed, and this fact is affirmatively established prior
to a sale of the bonds, we must deny the authority to embark upon such
an enterprise. In the instant case the amount of bonds proposed is too
large, considering the taxable values within the territorial limits of the
school district. The undertaking, as it appears on the record, is top-
heavy and wanting in self-sufficiency, for which reason the law must
withhold its approval.

Again, as said in *Lang v. Development Co.,* 169 N. C., 662: "It is
no answer to this position that, in the particular case before us, no
harm is likely to occur or that the power is being exercised in a con-
siderate or benevolent manner, for where a statute is being squared to
requirement of constitutional provision (or where the contemplated
action of a governing body is being squared to statutory regulations) it
is what the law authorizes and not what is being presently done under
it that furnishes the proper test of its validity."

The statute provides that an election of this kind may be held in any
school district "which embraces an incorporated town or city, or in
which there is maintained a public high school." It is admitted that
the present district contains no high school, and it is very doubtful as
to whether "Westrays" is such an incorporated town within the mean-
ing and purpose of chapter 55, Public Laws 1915. But for reasons
otherwise sufficient, we do not now pass upon this point, as it is un-
necessary to do so.

Upon the facts as found the temporary restraining order should have
been made permanent, and this will be certified to the Superior Court.

Error.