BETSY LONG v. THE TOWN OF ROCKINGHAM.

(Filed 20 February, 1924.)

1. **Constitutional Law—Statutes — Due Process — Appeal — Condemnation—Public Use.**

Though our State Constitution is silent upon the subject, in order to take private property by condemnation for a public use, it is necessary for a statute permitting it to require just compensation to be paid the private owner of land so taken, and to provide that the owner be heard in the proceedings upon notice, with further right of appeal to the court in conformity with the due-process clause.

LONG *v.* ROCKINGHAM.

**2. Same—Procedure.**

A statute permitting a municipal corporation to take private property for a public use, by condemnation, should be substantially followed by a municipality in taking advantage of its provisions, and the statute will not be declared invalid unless the nullity of the act is beyond a reasonable doubt.

**3. Same—Cemeteries.**

Where the charter of a city or town provides for condemning lands of private owners for cemetery purposes in the manner prescribed for condemnation thereof for street or other purposes, without specific provision for appeal in conformity with the constitutional due-process clause, under the general statute (C. S., 1724), applying to municipal corporations, this right of appeal is preserved, and the charter provisions of the city or town will not be declared for that reason unconstitutional by the courts.

**4. Same—Guardian and Ward.**

Where an infant is the owner of lands sought to be condemned by a municipality for cemetery purposes, such infant must defend by her general guardian, where one has been appointed (C. S., 451) ; and where service of process has been made upon the general guardian, and it appears upon the officer's return of notice that service has been executed upon the infant, such return is sufficient evidence of its service upon the infant to take the case to the jury upon the question involved in the issue. C. S., 921.

**5. Same.**

Where the general guardian has been made a party to proceedings to condemn land by a municipality of his ward's land for cemetery purposes, he is the proper one to appeal to the Superior Court, and prosecute it when dissatisfied with the value placed upon the ward's lands by the assessors appointed under the statute.

**6. Guardian and Ward—Settlement—Receipt—Acquittance—Election of Remedies.**

Where the general guardian has appealed in condemnation proceedings to the Superior Court from an assessment made of the value of his ward's land, and has in good faith agreed upon the value at a much better price, which was paid and incorporated specifically in the final settlement with his ward, who, aware of the circumstances, had accepted it and given a full acquittance in writing, in her action against the city, brought nearly two years afterward: *Held,* that she had been put to her election to affirm or disaffirm· his action within a reasonable time after reaching her majority, and her testimony that she was unaware that it was included in her acceptance raised an issue of fact for the jury to determine, and it was reversible error for the judge to hold in her favor as a matter of law.

**7. Same—Evidence—Process—Endorsements.**

A receipt and full acquittance by the ward upon coming of age, given to the guardian, are *prima facie* evidence that they spoke the truth.

APPEAL from *Harding, J.,* at March Term, 1923, of RICHMOND.

Civil action. In this cause a complaint was filed, and an answer, an amended complaint, and an answer thereto, and a reply.

The plaintiff, Betsy Long, brought this action against the defendant, the town of Rockingham, to recover possession of about 10 15-16 acres of land near the town of Rockingham, which she claimed was illegally taken by the town of Rockingham and used as a cemetery, and for damages.

The defendant, town of Rockingham, admits it took possession of the land, but contends that it did so legally, under power and authority given it in its charter and the laws of North Carolina applicable to municipal corporations, for cemetery purposes; that the land was con-demned in accordance with law; that she and her guardian were served with process, and her general guardian, W. F. Long, her uncle, was paid full value for the land, more than the jurors allowed. The jurors assessed the land at $350 an acre, and her guardian appealed from the assessment and afterwards accepted $4,375 from the town of Rockingham in full for the land; that his returns as guardian for Betsy Long, in the clerk's office for Richmond County, shows:

"25 October. To cash from town of Rockingham for 10 15-16 acres land condemned for cemetery purposes, $4,375."

That each year, from 1913 until Betsy Long became of age, the guardian accounts of W. F. Long showed that she was allowed 6 per cent interest on this amount; that Betsy Long became of age 17 April, 1919, and she gave her guardian, W. F. Long, receipts for what he owed her as guardian, 28 April, 1919, $5,832.94; 19 June, 1919, $1,673.60 in bonds and war savings stamps; and the final receipt, with statement of account, was as follows:

"$2,031.59. Received of W. F. Long, my guardian, $2,014.55 and $17.14 interest in full settlement of all sums due me, and I hereby release him and his sureties on his bond of any further liability by reason of his guardianship.

"This 19 June, 1919.                          BETSY LONG."

That in the sums paid Betsy Long was the amount W. F. Long, her guardian, received from the town of Rockingham, with 6 per cent interest; that she received said sum with full knowledge of all the facts; that the town of Rockingham took possession of the land and has been selling it off in lots for burial purposes; that it and the persons who have purchased lots have spent large sums of money in beautifying the property; that during all of which time Betsy Long and her guardian, her uncle, W. F. Long, have had knowledge of the use made of the property and expenditures; that she came of age 17 April, 1919, and waited nearly two years before beginning this action, 4 April, 1921.

The defendant, town of Rockingham, in its answer, alleges: "The plaintiff has thereby, and by her other acts and acquiescence in said procedure since she attained her majority, ratified and confirmed the acquisition of said tract of land described in the complaint by the town of Rockingham, as aforesaid set forth, and the plaintiff, by her conduct and by said affirmance and acquiescence and by the procedure aforesaid set forth in this answer, is estopped to assert title or any other interest in and to the tract of land described in the complaint, as defendants are informed, advised and believe, and therefore allege."

The defendant, Betsy Long, replies and says: "That there has never been any valid condemnation by the town of Rockingham of any of the lands of plaintiff, and the defendant, town of Rockingham, abandoned even the attempted condemnation and attempted to purchase plaintiff's lands from her guardian, but plaintiff avers that her said guardian had no authority to sell any of her lands to the defendant, and that he made no written contract with the defendant for the sale of any of her lands, and that any attempted verbal contract on his part was and is null and void and incapable of ratification, and she avers that she has never ratified same, and she pleads the statute of frauds in bar of any such alleged contract."

There were seven issues submitted to the jury. We will only consider three we think necessary for the consideration of this case, which are as follows:

"1. Was the land described in article 2 of the amended complaint condemned for the use of the defendant as a cemetery under the charter of the defendant and the general laws of the State in the years 1912 and 1913, as alleged in the answer?

"2. Did the plaintiff, after she reached the age of twenty-one years, by acts of her own, waive her right to recover the possession of the land and damages for the taking thereof?

"3. Is the plaintiff the owner of the land described in the amended complaint?"

The defendant has in the record seventy-seven exceptions and assignments of error. The issues submitted, and the charge of the court on these issues, were duly excepted to. The charge of the court on these three issues was as follows:

"The court is of the opinion that there is not sufficient evidence to warrant the jury in answering that issue 'Yes'—that is, that there is not sufficient evidence to go to the jury on the question of condemnation, and directs that you shall answer the first issue 'No,' and the court has answered it for you.

"The court is of the opinion that there is not sufficient evidence to go to the jury in warranting them in finding there was a waiver, if they

should find the evidence to be as testified to by the defendant or by all the evidence; so the court directs you to answer the second issue 'No,' and the court, to relieve you of that, has already answered it; so you should not disturb yourselves about the first and second issues.

"The court charges you that if you believe the evidence you will answer that issue—the third issue—'Yes.'"

There was a judgment for plaintiff, and the defendant excepted and appealed to this Court. The other material facts will be set forth in the opinion.

*Ozmer L. Henry, H. S. Boggan, and Parker & Craig for plaintiff.*
*J. C. Sedberry, U. L. Spence, and Pou, Bailey & Pou for defendant.*

CLARKSON, J. The first issue submitted to the jury raises the question of law—the validity of the condemnation proceeding and constitutionality of the statutes.

In *Coble v. Comrs,* 184 N. C., 348, this Court said: "We should apply the principle that every presumption is to be indulged in favor of the validity of the statute, that the General Assembly is presumed to have acted with an honest purpose to observe the restrictions and limitations imposed by law, and that legislation will be sustained unless its invalidity is 'clear, complete and unmistakable,' or unless the nullity of the act is beyond a reasonable doubt," citing authorities. *Person v. Doughton,* 186 N. C., 723.

In *Parks v. Comrs.,* 186 N. C., 498, it was said: "It is frequently a perplexing problem to tell how far the individual has to yield his personal and property rights for the common good." . . .

"Notwithstanding there is no clause in the Constitution of North Carolina which expressly prohibits private property from being taken for public use without compensation, and although the clause to that effect in the Constitution of the United States applies only to acts by the United States, and not to the government of the State (*S. v. Newsom,* 27 N. C., 250), yet the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina." *Johnston v. Rankin,* 70 N. C., 555. See, also, *S. v. Lyle,* 100 N. C., 497.

The rights of municipal corporations has recently been thoroughly discussed in *Gunter v. Sanford,* 186 N. C., 461, by *Adams, J.* He said, in part: "In our opinion, the statutes in question do not offend against the State Constitution or the due-process clause of the Federal Constitution. On the other hand, they afford the plaintiffs adequate means litigating the matters in controversy before the board of aldermen, and if desired, by appeal from their decision to the Superior Court."

"Where the Legislature has prescribed a method of procedure, the statute on the subject must ordinarily be followed." *Clinton v. Johnson,* 174 N. C., 286; *Proctor v. Comrs.,* 182 N. C., 59; *Parks v. Comrs., supra,* 497.

The acts of the General Assembly, the charter of the town of Rockingham and the amendments thereto were introduced in evidence by the defendant in the trial of the cause in the court below.

Private Laws 1909, ch. 161, introduced in evidence, provides: "That the board of commissioners of the town of Rockingham shall have the right, either within or without its corporate limits, to condemn land for cemetery uses, as now provided by its charter for the condemnation of land for streets or other purposes."

The original charter of the town is found in Private Laws 1887, ch. 101.

Section 26, as amended by Private Laws 1911, ch. 264, relates to condemnation of land for streets and other purposes.

It is contended by plaintiff that the charter under which the town proceeded to condemn plaintiff's land made no provision for condemning infants' lands. The charter provides, "to condemn land for cemetery uses." The language is broad and comprehensive and should not be restricted. The intention of the Legislature, if the language is not in direct terms, it was by necessary implication, to condemn any one's land—man, woman, infant, etc. It was for a sacred purpose—the burial of the dead.

The instant case is different from that of *Eppley v. Bryson City,* 157 N. C., 487, cited by plaintiff. That case decides: "An incorporated town was authorized to erect, own and operate an electric plant under chapter 217, Private Laws 1911, conferring the power of condemnation 'in the same manner as is now provided by law for the condemnation of lands for streets.' The charter of the town contains no method of procedure for condemning lands for streets. *Held,* that to lawfully authorize a municipal corporation to exercise the right of eminent domain the power must be expressly conferred or arise by necessary implication, and the procedure necessary to give it effect must be provided; but a valid exercise of this power may be done by the municipality under the general law (chapter 86, section 1, Public Laws 1911), where all requisite powers are conferred."

In the case at bar the charter contains a method of procedure. Section 26, *supra.*

(1) The commissioners are given the power to condemn and appropriate any land necessary for cemetery uses whenever a majority of them may think necessary or advisable, on making compensation.

The minutes of the board of commissioners of the town of Rocking-ham, held on 14 May, 1912, shows the following:

"On motion, the mayor is instructed to condemn what land is neces-sary for the enlargement of Eastside Cemetery, and is to consult attor-ney in manner to proceed."

4 November, 1912, shows the following:

"On motion, the mayor is directed to take whatever steps that are necessary in condemning land for the enlargement of Eastside Cemetery, and report to board as soon as possible."

(2) It shall be the duty of the commissioners of said town to tender, through their clerk and treasurer, the amount they may think the owner of any land may be entitled to as damages.

3 December, 1912, shows the following:

"On motion, the following order was passed as to condemning addi-tional land for Eastside Cemetery purposes, and the treasurer was instructed to make the several tenders to parties named, as soon as possible, and report his action to board:

"Order.—It appearing to the board of commissioners of the town of Rockingham that additional land is necessary for burial purposes, it is therefore ordered that the clerk to this board is authorized, directed and empowered to tender to the persons hereinafter named the amount placed opposite each name in full satisfaction of their lot or parcel of land, hereinafter described, situate near and adjacent to Eastside Ceme-tery, and described more fully by plot made by C. M. Furman, Jr., on file in the office of the clerk to this board:

"To Hal Cole, $500 for the following described lot. . . .

"To Mary Fletcher, $500 for the following described lot. . . .

"To Charlie Esau Leak, $600 for the following described lot. . . .

"To W. F. Long, guardian of Betsy Long, $125 per acre for a tract containing 10 15-16 acres, more or less, described as follows. . . .

"It is further ordered that in case the parties mentioned above should refuse to accept the amount tendered in full satisfaction for the land above described, that the mayor cause a notice to be served on the par-ties above named, and directing J. E. Young, chief of police, to sum-mons a jury and condemn the above-described lands, as is prescribed by law.

"Payment tendered each of the above-named parties and refused.

"This the 9th and 10th day of December, 1912.

W. L. SCALES, *Clerk and Treasurer.*"

(3) If such amount should not be accepted in full satisfaction there-for, the mayor of the town shall have the power to issue an order directed to the town constable or other officer commanding him to

summons as jurors three citizens of said town, freeholders, *connected neither by consanguinity nor affinity with the mayor or commissioners of said town or the person or persons whose land is to be condemned.* (Italics ours.)   Said order shall direct the town constable or other officer to summons said jurors to meet on the land to be condemned on a day not exceeding ten days from the day of summoning them, and the owner or owners of said lands shall be notified by the constable or other officer of said town of the summoning of said jurors, and the time and place of their meeting and the purpose of their meeting, for five days before the day when the said jurors will meet to condemn the land.

The following is the summons:

"OFFICE OF BOARD OF COMMISSIONERS,
TOWN OF ROCKINGHAM, N. C.
W. N. EVERETT, *Mayor.*

"NORTH CAROLINA,
RICHMOND COUNTY.

"To J. E. Young, Chief of Police:

"You are hereby commanded to summon Wm. Entwistle, J. P. Maurice, and J. W. Brigman to meet on Monday, 23 December, 1912, at 3 o'clock p. m., on the premises adjacent to the Eastside Cemetery lot, belonging to Hal Cole, Mary Fletcher, Charlie Esau Leak, and Betsy Long, for the purpose of assessing the damages that may accrue to the owners thereof by condemning it for the use of a public burial ground.

"Herein fail not, and of this summons make due return.   Witness my hand, this 17 December, 1912.

W. N. EVERETT,
*Mayor of the Town of Rockingham."*

On the back of the summons appears the following:

"The Town of Rockingham v. Hal Cole et al.   Summons.   Jury: Wm. Entwistle, J. P. Maurice, J. W. Brigman.   Received 17 December, 1912; served 18 December, 1912.   J. E. Young, Chief of Police. Written notice served on Hal Cole, Mary Fletcher, and Charlie Esau Leak, 17 December, 1912, and on Betsy Long and W. F. Long, guardian, 18 December, 1912, reciting the date the jurors met, at what place, and the purpose of this meeting.   J. E. Young, Chief of Police."

(4) Said jurors, attended by the constable or other officer, after being sworn by the mayor *to do strict and impartial justice between the*

*parties* (italics ours), shall proceed to condemn the land and shall assess the damages sustained by the owner or owners of such land; and the said jurors shall, under their hands and seals, make a return of their proceedings to the mayor of said town, and the board of commissioners of the said town shall make compensation to such owner or owners of said land for the amount of damages so assessed by said jurors, or a majority of them, on the return of the report of said jurors to the mayor of said town, and the payment or tender of payment to the owner or owners of said land by the town clerk and treasurer, under the order and direction of said commissioners of said town of the amount of damages so assessed, by said jurors or a majority of them, said land condemned shall be in all respects under the control of the board of commissioners of said town.

The following is the report of the jurors:

"CONDEMNATION PROCEEDINGS—REPORT OF JURY.

"In re The Town of Rockingham, N. C., v. Hal Cole, Mary Jane Fletcher and Betsy Long, by her Guardian, W. F. Long.

"To W. N. Everett, Mayor of the Town of Rockingham:

"We, the undersigned jurors, appointed and summoned to assess the damages that will be sustained by Hal Cole, Mary Jane Fletcher and Betsy Long, the owners of certain lands lying in the county of Richmond, and situate near Eastside Cemetery, which the said town proposes to condemn for its use as a public burial ground, met on 27 December, 1912, the day to which we were regularly adjourned, after first having met on 23 December, and after first having been duly sworn, we visited the premises of the owners, and after taking into full consideration the quality and quantity of the lands aforesaid and all losses likely to result to the owners, we have estimated and do assess the damages aforesaid as follows:

"To Hal Cole—$1,600 for the following described lot: Describing it.

"To Mary Jane Fletcher—$1,000 for the lot described as follows: Describing it.

"To Elizabeth (Betsy) Long—$350 per acre for a tract containing ten and fifteen-sixteenths acres, described as follows: Describing it. Total, $3,828.12.

"Given under our hands and seals, this 27 December, 1912.

WM. ENTWISTLE.     (SEAL.)<br>
J. W. BRIGMAN.     (SEAL.)<br>
J. P. MAURICE.     (SEAL.)"

Exceptions Filed by W. F. Long, Guardian of Betsy Long.

"W. F. Long, guardian of Elizabeth Long, appeals from the assessment made by Entwistle, Brigman, and Maurice of land belonging to his said ward, for the following reasons:

"1. That said valuation is not as much as the land is worth, and much below what the same will sell for on ten seconds notice.

"And the following exceptions are made as to the appointment of the assessors or jury:

"(1) That the landowners had no say as to who said jurors should be, and were not consulted as to same.

"(2) That the law requires freeholders to perform such service, and in this case was not complied with."

24 June, 1913, shows the following:

"On motion, it was ordered that $350 per acre for ten acres be tendered W. F. Long for land for cemetery purposes and that surveyor be employed to begin work on same. Motion amended to employ landscape gardener to do the work."

3 September, 1913, shows the following:

"Mr. W. F. Long, guardian, made the town an offer to accept $4,000 for the ten acres land adjoining the Eastside Cemetery, and on motion of Gore, seconded by Whitlock, it was decided that this offer be accepted."

7 October, 1913, shows the following:

"Motion Mr. Gore, seconded by Mr. Barrett, that papers of W. F. Long, guardian of Betsy Long, be accepted for cemetery lot at $400 per acre for the 10 and 15-16 acres, when papers are approved by Attorney McLendon. Motion carried."

We give above the substance of the charter and the manner in which the plaintiff's land was condemned.

The constitutionality of the statute and the validity of the proceedings presents serious questions:

(1) The first tender before the assessment of damages made under the statute was made not to the owner, but to W. F. Long, guardian of Betsy Long, the plaintiff. The guardian refused this tender. Then the jurors were summoned and regular notice served on the owner, Betsy Long, and her guardian, W. F. Long. She and her guardian had notice of the time and hour the jurors were to meet, viz.: "Monday, 23 December, 1912, at 3 o'clock p. m., on the premises." As far as the record discloses, the jurors met at the place and time appointed and adjourned to 27 December. They were duly sworn and made their report.

Did the plaintiff, Betsy Long, have her "day in court?"

The first tender, although not made to Betsy Long, but her guardian, we do not think material as she was not prejudiced, as the amount afterwards paid her guardian exceeded several times the amount tendered. She was tendered $125 per acre and the amount paid her guardian was about $400 per acre. The tender was a formal and not a material matter. *Dudley. v. Tyson,* 167 N. C., 67. The officer's return shows that she and her general guardian were both personally served. In the view we take of this case, the remedy, if plaintiff had one, was a motion in the cause to set aside the proceeding. We have not overlooked her evidence (which was excepted to by defendant) and is as follows:

"Q. Miss Betsy, did Mr. J. E. Young or any one else ever read a summons or notice to you that they were going to condemn any of your land in 1912 or 1913 or any other time? Answer: 'No, he did not.' "

C. S., 921, is as follows: "When a notice issues to the sheriff, his return thereon that the same has been executed is sufficient evidence of its service."

In *Lake Drainage Comrs. v. Spencer,* 174 N. C., 36, it is held: "The sheriff's return showing service of summons on defendant in an action, in this case proceedings to establish a drainage district, is taken as *prima facie* correct, and may not be successfully attacked by motion in the cause, except by clear and unequivocal evidence, requiring the testimony of more than one person to overturn the official return of the officer. Revisal, 1529 (C. S., 921)." See cases cited and *Caviness v. Hunt,* 180 N. C., 386.

In the *Caviness case, supra,* 384, *Allen, J.,* says: "It makes little difference whether this action is called one to remove a cloud from title or to invoke the aid of a court of equity to prevent an injustice, its purpose is to set aside a judgment, regular on its face, and rendered on process showing service, and under such conditions the law furnishes a complete and adequate remedy by motion in the original action. The authorities in support of this principle are numerous, and it is correctly stated in *Stocks v. Stocks,* 179 N. C., 288, as follows: 'Where it appears that summons has been served, when in fact it has not been, the remedy is by motion in the cause to set aside the judgment, and not by an independent civil action, but when it appears on the record that it has not been served, the judgment is open to collateral attack. *Doyle v. Brown,* 72 N. C., 393; *Whitehurst v. Transportation Co.,* 109 N. C., 342; *Carter v. Rountree, ibid.,* 29; *Rutherford v. Ray,* 147 N. C., 253; *Rackley v. Roberts,* 147 N. C., 201; *Bailey v. Hopkins,* 152 N. C., 748; *Hargrove v. Wilson,* 148 N. C., 439; *Glis-*

14—187

*son v. Glisson,* 153 N. C., 185; *Barefoot v. Musselwhite, ibid.,* 208.' "
When the special statute is silent by analogy, ordinarily, we think the
general statute applicable.

The plaintiff in the proceedings was represented by her general
guardian. When she was served, if she had no general guardian, then
a guardian *ad litem* could have been appointed.

C. S., 451, is as follows: "In all actions and special proceedings when
any of the defendants are infants, idiots, lunatics, or persons *non com-
pos mentis,* whether residents or nonresidents of this State, they must
defend by their general or testamentary guardian, if they have one
within this State; and if they have no general guardian or testamentary
guardian in the State, and any of them has been summoned, the court
in which said action or special proceeding is pending, upon motion of
any of the parties, may appoint some discreet person to act as guardian
*ad litem,* to defend in behalf of such infants, idiots, lunatics, or persons
*non compos mentis,"* etc.

The guardian had a right of appeal under the general statute, which
is broad and comprehensive. It is Public Laws 1893, ch. 148, and is
entitled "An act to secure the right of trial by jury in certain cases."
In C. S. it is section 1724: *"Provision for jury trial on exceptions to
report.* In any action or proceeding by any railroad or other corpora-
tion to acquire rights of way or real estate for the use of such railroad
or corporation, and in any action or proceeding by any city or town
to acquire rights of way for streets, any person interested in the land,
or the city, town, railroad or other corporation shall be entitled to
have the amount of damages assessed by the commissioners or jurors
heard and determined upon appeal before a jury of the Superior Court
in term, if upon the hearing of such appeal a trial by a jury be de-
manded." *Cook v. Vickers,* 141 N. C., 107. .

Under the charter of the town of Rockingham, the right to condemn
for cemetery uses was made the same as provided for condemning land
for streets. We think the charter of the town of Rockingham in refer-
ence to condemnation of the land for cemetery purposes constitutional,
and the procedure valid and substantially complies with the statute.
*R. R. v. Ely,* 95 N. C., 77; *S. v. Lyles,* 100 N. C., 497; *S. v. Jones,* 139
N. C., 613, and cases cited. We repeat what was said in *Parks v.
Comrs., supra,* 499: "The power that can be granted to local govern-
mental agencies, unless restrained by constitutional provision, are broad
and comprehensive. *The powers when granted should be exercised with
care and caution."* (Italics ours.)

. The second issue raised the question of ratification after the plaintiff
came of age.

In *Norwood v. Lassiter,* 132 N. C., 55, *Walker, J.,* said: "When the plaintiff received the money he did something that was utterly inconsistent with his right to repudiate or disaffirm the sale. When a party has the right to ratify or reject, he is put thereby to his election, and he must decide, once for all, what he will do, and when his election is once made, it immediately becomes irrevocable. This is an elementary principle. *Austin v. Stewart,* 126 N. C., 525. He could not accept the money derived from the sale and at the same time reserve the right to repudiate the sale. *Kerr v. Sanders,* 122 N. C., 635; *Mendenhall v. Mendenhall,* 53 N. C., 287. It is familiar learning that when two inconsistent benefits or alternative rights are presented for the choice of a party, the law imposes the duty upon him to decide as between them, which he will take or enjoy, and after he has made the election he must abide by it, especially when the nature of the case requires that he should not enjoy both, or when innocent third parties may suffer if he is permitted afterwards to change his mind and retract."

In this action there is no allegation of fraud or deceit. The action is brought on the ground that the act is unconstitutional and the proceedings thereunder is invalid. The whole procedure void—not irregular or voidable.

The evidence undisputed was that the plaintiff lived in the town of Rockingham. It was her home. Her uncle, W. F. Long, was her general guardian. The land condemned for cemetery purposes were 10 15-16 acres on a public highway near the old cemetery, close to the town limits of Rockingham. She lived most of the time with her guardian, W. F. Long, and the last six years before the trial with W. F. Long, Jr. She went to the graded school in Rockingham and left when in the ninth grade and went to Belmont School and Peace Institute. She said: "I testified in the other trial of this case that I knew the cemetery was on my land or the land I claimed, and this is true, and I have known this from the beginning." She had a settlement with her guardian after she came of age and signed the receipts for the items of money turned over to her. She further said: "My guardian is still living; he is right over there (meaning in court). The best relations existed between me and my uncle, who was my guardian, and have existed during all my life. When I signed those receipts shown me and attached to defendant's Exhibit 1, I knew I was making a final settlement with my guardian; that is what I went to his office for. He made a final settlement with me there. He turned over the property to me that belonged to me."

On redirect examination she stated: "At the time I signed those receipts I did not read them; I do not know what was in them.

"Q. Did you know there was any attempt on the part of any one to sell your land out there? Answer: 'No, sir.'

"Q. Did you know there had been any attempted condemnation of any of it? Answer: 'No.'"

The guardian returns of W. F. Long shows that on 4 April, 1913, he had on hand $3,709.87, and on 25 October, 1913, he had this additional sum, "To cash from town of Rockingham for 10 15-16 acres of land condemned for cemetery purposes, $4,375." Plaintiff's personal estate was increased over double when she was about 13 years of age, and from the returns her income—interest on the money—was more than doubled and each year accounted for in her guardian's return. She received and receipted for this additional fund coming from the town. She waited two years after arriving of age before bringing this action.

If the condemnation proceeding had been irregular or voidable, there was far more than a scintilla of evidence to go to the jury on her ratification with knowledge. The receipt and release were *prima facie* evidence that it spoke the truth and was correct.

The third issue was: "Is the plaintiff the owner of the land described in the amended complaint?" From the view taken of this case, we think the court below was in error in its charge on this issue.

W. F. Long was the general guardian of Betsy Long; was entrusted with her estate. He gave bond as such guardian as required by law. He was the uncle of the plaintiff. The statute put on him the responsibility when she and he were notified to appear and do all that was reasonable and necessary to protect the rights of his ward and niece. He was present when the jury met, and after the jurors made their report he filed exceptions, but did not perfect the appeal and took the money and allowed the defendant to take possession of the property and use it as a burial ground for the dead. He stated, "I told the attorney for the board that if they would make the amount $400 that I would not pursue the appeal."

Sec. 3, 11 C. J., p. 1123, says: "In the absence of any statutory restriction, a guardian has authority to compromise a claim existing in favor of his ward, provided he acts in good faith; but the ward is not bound by a compromise which is unfair or fraudulent or is not made in good faith." *Bunch v. Lumber Co.*, 174 N. C., 8; *Culp v. Stanford*, 112 N. C., 664; *Luton v. Wilcox*, 83 N. C., 20. See, also, *Rector v. Logging Co.*, 179 N. C., 62.

The town, in good faith, with the consent of W. F. Long, guardian of Betsy Long, took possession of the land and has sold lots, since the condemnation, to various parties, and it has been beautified and ever

since has been used as a sacred place—the burial of the dead. The plaintiff received the money for this burial ground from her uncle, her general guardian, and released him and his sureties from any liability. If he had not performed in good faith his duty to her as guardian and squandered her estate, or was recreant to any trust the law imposed on him as such guardian, she could have sued him. In the instant case, if his conduct was collusive and in fraud and in substantial prejudice of her rights, she could have sued him. She says, "The best of relations existed between me and my uncle, who was my guardian, and have existed during all my life." The record shows he made regular annual returns—itemized and accounted to her for the interest on the money each year. We are asked to declare void a legislative act—which our decisions have uniformly held could not be done *"unless the nullity of the act is beyond a reasonable doubt."* We are asked to declare invalid what the mayor and town commissioners of Rockingham did—in good faith, under legislative authority. What the jurors were sworn to do—"strict and impartial justice between the parties." What W. F. Long, the uncle and the general guardian of the plaintiff, did. Under all the facts and circumstances of this case, we think, for the reasons given in this opinion, in the charge of the court below there was error, and there should be a

New trial.          :