The plaintiff is a resident of the city of Monroe and brings this action to permanently restrain and enjoin the said city and its tax collector, James McNeely, from levying upon his property for the purpose of collecting the assessment made against his property for the improvement of what is known as Charlotte Avenue. The plaintiff is the owner of a piece of property in the city of Monroe and contends that without authority of law and against his protest, the city of Monroe, in July, 1922, appropriated a part of his property for a so-called street or roadway, from Crowell Street to the right of way of the Seaboard Air Line Railway Company, a strip of land 70 feet in width a large part of the distance and 41 feet at its narrowest point. The land taken for the street was about one-third of the lot and the balance was left useless for development and practically worthless, without compensating the plaintiff for same. That after the street had been laid off and graded, the city, without authority of law, declared an assessment district for said street from Crowell Street to the city limits, and proceeded to pave the same.
That no petition was filed by a majority of the abutting property owners, etc., in accordance with C. S., ch. 56, art. 9. That the so-called street is not properly a street of the city, but is a connecting link of the State Highway system through the city, which is a city of more than 3,000 inhabitants according to the last U.S. census. That a considerable part of the streets of Monroe had been previously paved and hard surfaced. That the only use or purpose of this improvement was to connect the State Highway system with the city of Monroe, and as such no part is legally chargeable to the abutting property owners. That the assessment is illegal and confiscatory and is taking plaintiff's property without due process of law.
The defendants, on the other hand, contend that the city of Monroe, during the year 1922, built a splendid street through the lot of plaintiff, on which he operates a public gin and mill, and the street has greatly increased the value of plaintiff's lot. That the city of Monroe declared an assessment district on the street, which it had opened through plaintiff's property, known as Charlotte Avenue, and paved said street from Crowell Street to the city limits; all of which was legally done. That under the provisions of law it was not necessary for a majority in number of abutting property owners to file a petition to have the street improved and paved. That the State Highway Commission did request and demand of the city to open and pave said avenue, and that the city of Monroe did open, improve and pave said avenue in accordance with the demand of the State Highway Commission, and the *Page 678 
improvement was made to connect the streets of the city with the Charlotte Highway, and provide for the safety and convenience of the public, and for the improvement of adjacent property. That the public interest demanded the street being opened and paved and the same was beneficial to adjacent property. That the city made the assessment against the plaintiff's property abutting on said street 1,097 feet. That as a matter of fact the defendant owns a number of adjacent lots which constitute one large lot, and on this lot the plaintiff has erected a valuable gin and mill plant to which he solicits the patronage of the public; that this property of the plaintiff was formerly on a back street and difficult of access, and as a result of the improvements made by the defendant city of Monroe, the said property has been placed upon a public and improved street, and has been increased in value by much more than the cost of the paving assessed against it. That the plaintiff is the owner of a large lot and a valuable ginning and milling plant near the old G. C. and N. Railway tracks in the city of Monroe; that prior to the year 1922 there was no approach to the defendant's property from the north of the city, from which he drew most of his patronage, except through a dangerous underpass under the property of the S. A. L. Railway Company and through a narrow and rugged road or street; that during the year 1922 the defendant city of Monroe decided to improve said street by widening, straightening and paving same and by extending same in a direct course from the city limits to Jefferson Street through the property of the plaintiff and directly in front of his splendid ginning plant; that this improvement was made as hereinbefore stated upon the demand of the State Highway Commission in order to furnish the proper connecting link between the paved streets of the city of Monroe and the paved Charlotte Highway, but same was also demanded for the safety and convenience of the public and for the improvement of property in the city lying along said avenue; that as a result of the opening and widening, improving and paving of said street or avenue, a splendid paved street has been built by and through the plaintiff's property and his business has been placed upon one of the principal avenues of the town, and the approach thereto has been rendered safe, whereas it was formerly dangerous, and his trade has been increased and his property has been enhanced in value by much more than the amount assessed against it. That the creation of the assessment district under which Charlotte Avenue was paved was done openly and publicly, and the plaintiff stood by and saw said avenue paved through his property and made no protest against the paving of same, but allowed his property to be benefited and improved by the paving of said street without protest on his part, and defendants are advised and believe that on account of his conduct, his silence and his acquiescence, *Page 679 
he is estopped to question the validity of the assessment made against him for the paving of said street.
The plaintiff in reply contends that at all times he protested against the action of the city of Monroe in attempting to charge the improvement against him and the other property owners.
The defendant contends that "some time in the month of October, 1922, it was ascertained that the city of Monroe would not be able to pave Charlotte Avenue in the manner ordinarily pursued by the city in the paving of its streets, and that the city would be unable to carry out its promise to pave Charlotte Avenue to connect with the National Highway except in accordance with the provisions of section 16, chapter 2, of the Public Laws of 1921, and upon this fact appearing to the State Highway Commission, the said commission addressed to the mayor of the city of Monroe a letter dated 11 October, 1922, directing the city of Monroe to improve the said Charlotte Avenue pursuant to section 16, chapter 2, of the Public Laws of 1921, and that thereupon the city of Monroe proceeded to order said Charlotte Avenue paved and the cost thereof taxed against abutting property pursuant to section 16, chapter 2, of the Public Laws of 1921; that the plaintiff took no steps to hinder or delay the paving of Charlotte Avenue, but on the contrary allowed the paving to proceed, and acquiesced therein and accepted the benefits thereof, and made no protest until after the said paving was done and the plaintiff's property was benefited thereby. That the Road Commission of Union County paid the sum of $4,289.37 for grading Charlotte Avenue from Crowell Street to the city limits, and that this sum was included in the amount taxed against the abutting property owners, but defendants aver that since the institution of this action they have eliminated the said item of $4,289.37 from the amount taxed against abutting property, and have amended the assessment roll in accordance therewith, and have decreased the amounts assessed against the abutting property owners proportionately."
On 11 October, 1922, Frank Page, chairman State Highway Commission, addressed the following communication to J. C. M. Vann, mayor of Monroe:
"You are hereby advised that it is found necessary by the State Highway Commission of North Carolina to connect the State Highway system with the streets of the city of Monroe, and that, pursuant to the authority vested in the said State Highway Commission by section 16, Public Acts of North Carolina, Session 1921, you and the other municipal officials of the city of Monroe are hereby directed and commanded to cause to be improved and hard surfaced, all of the present unimproved portions of Main Street, along Jefferson Street to Charlotte Avenue, and thence to the city limits, or, in other words, all of the *Page 680 
portion of the State Highway traversing the corporate limits of the city of Monroe, the entire cost of construction of said streets traversed by the State Highway to be borne by the city of Monroe.
"You are further advised that it is the sense of the State Highway Commission that this particular and highly important and necessary construction does not constitute an `extraordinary case,' as contemplated by the second paragraph of the section above referred to.
"Under the further provisions of the section of said act, as above referred to, you are further and hereby commanded, through the governing body of the city of Monroe, to declare an assessment district as to the streets to be improved as above indicated, such work to be completed within six months from the first day of November, 1922."
The following resolutions were unanimously adopted by the board of aldermen of the city of Monroe:
"Whereas the State Highway Commission, through its chairman, Frank Page, in accordance with the provisions of section 16 of chapter 2 of the Public Laws of North Carolina of the Session of 1921, has notified and required the municipal officials of this city to cause to be improved and hard-surfaced all the present unimproved portions of Main Street along Jefferson Street to Charlotte Avenue, and thence Charlotte Avenue to the city limits; and whereas all of such portion of the streets referred to in said notice have been improved and hard-surfaced, except that portion of Charlotte Avenue from its intersection with Crowell Street to the city limits:
"Now, therefore, be it resolved, that Charlotte Avenue be improved in accordance with the provisions of the laws of the State of North Carolina, by paving that portion of same from its intersection with Crowell Street to the northern line of the town or city limits, said improvements to consist of draining, grading, curbing and guttering said Charlotte Avenue, paving to be of sheet asphalt upon a four-inch concrete base; base under the underpasses shall be eight inches thick; paving, curbing and guttering to be made and laid and the work done in accordance with the specifications now on file and in force governing street improvement and heretofore agreed on between the city of Monroe and the Redmon Construction Company.
"It is further resolved, that the contract for improvement in this district, except grading, be and the same is hereby awarded to the Redmon Construction Company, at the price agreed upon in contract with said company for the improvement of Jefferson Street and Charlotte Avenue to Crowell Street; that no advertisement is necessary or required for the letting of this contract, in view of the existing emergency and the fact that the price agreed upon in contract with Redmon Construction Company and the city for the improvement of Jefferson Street and *Page 681 
Charlotte Avenue to Crowell Street were made and accepted in contemplation of, and as a part of, the proposed present improvement."
"Whereas the city of Monroe, North Carolina, by order and requirement of the State Highway Commission, has made provisions for the improvement by draining, paving, curbing and guttering all that portion of Charlotte Avenue from its intersection with Crowell Street to the city limits:
"Now, therefore, be it resolved by the board of aldermen of the city of Monroe, that said portion of Charlotte Avenue from its intersection with Crowell Street northwardly to the corporate limits be and the same is hereby declared an assessment district as to that portion of said street or avenue to be improved, without petition by the owners of property abutting thereon, and that the total cost of the improvement in said assessment district be and the same is hereby charged to the owners of property abutting on said improvements, as provided by law."
The plaintiff J. T. Shute and others filed allegations and objections on 2 April, 1923, before the board of aldermen to the confirmation by the board of the assessment roll. The allegations and objections before the board to special assessment for paving Charlotte Avenue are practically the contentions of plaintiff heretofore set forth. The defendants contend that the same were filed after the assessment roll was approved, which was on 1 March, 1923.
The court below dissolved the temporary restraining order and dismissed the action. The plaintiff excepted and assigned error, and appealed to the Supreme Court.
The other material facts will be set forth in the opinion.
Before passing on the main questions presented by this appeal, it is meet and proper to consider a matter appearing from the record that is of supreme importance — the taking of plaintiff's land, to be used as a part of Charlotte Avenue, without just compensation.
From the record it does not appear that this matter has been finally adjudicated. The record shows that the board of aldermen, on 14 July, 1922, unanimously adopted the following ordinance:
"Ordinance opening Charlotte Avenue.
"The Board of Aldermen of the City of Monroe, N.C. do ordain:
"1. That a public street, 40 feet wide, to be called Charlotte Avenue, be laid out and opened from a point on Bear Skin Creek, in the northern boundary of the city limits, and running in a southerly direction, passing under the two new underpasses of the Seaboard Air Line Railway Company, to Jefferson Street at a point west of Stewart Street, said *Page 682 
street to be laid out according to the plan and specifications of the State Highway Commission and as shown on a blueprint made by said State Highway Commission.
"2. Be it further ordained, that the land covered by said street be and the same is hereby condemned and appropriated for the uses and purposes of a public street.
"3. That Alderman James W. Fowler be empowered and directed to negotiate with the owners of the land covered by said avenue with a view of getting deeds for said land, and in case said James W. Fowler cannot reach an agreement with the owners of the land, then and in that event the city clerk is authorized and required to issue notice to such owner who fails to agree with the city, notifying such owner to select an arbitrator as provided in section 22 of chapter 352 of the Private Laws of 1899."
Section 22, supra, is as follows: "That the board of aldermen shall have power to lay out, open and name any street or streets within the corporate limits of said city whenever by them deemed necessary, and shall have power to widen, enlarge, change, extend or discontinue any street or streets or any part thereof within the corporate limits, and shall have full power and authority, for the purposes herein expressed, to condemn, appropriate or use any land or lands within said city, upon making reasonable compensation to the owner or owners thereof; and in case the owner or owners of any land which shall be condemned, appropriated or used under the provisions of this act, and the board of aldermen shall fail to agree upon the compensation for such land, the matter shall be settled by arbitrators, who shall be freeholders and residents of said town, and shall be chosen by the parties — one by the aldermen and the other by the owner of said land; and in case the owner of such land shall fail or refuse, upon notice given, to choose such arbitrator, then the mayor of said city shall select one in his stead; and in case the two chosen as aforesaid cannot agree, they shall select an umpire, whose duty it shall be to examine the land condemned and ascertain the damages sustained and the benefits accruing to the owner in consequence of the change; and the award of the arbitrators and umpire, or any two of them, shall be conclusive of the rights of the parties, and shall vest in the city of Monroe the right to use the land for the purpose herein specified; and all damages agreed upon by the parties or awarded by the arbitrators, in case of disagreement, shall be paid by taxation or as other liabilities of the corporation: Provided, that either party may appeal to the Superior Court as now provided by law."
The plaintiff's contention in the complaint is that this was done without authority of law. The proceeding before the board of aldermen to condemn this land was started in accordance with law, but it is nowhere *Page 683 
shown that the matter has been completed in accordance with section 22,supra. The plaintiff's rights in this matter are well settled in this State.
It was said in Parks v. Comrs., 186 N.C. 498: "Where the Legislature has prescribed a method of procedure, the statute on the subject must ordinarily be followed." From the record, the condemnation of plaintiff's land was commenced under the procedure prescribed by the statute, but not completed according to the statute.
The Anglo-Saxon holds no material thing dearer than the ownership of land; his home is termed his "castle." Although there is nothing in the Constitution of North Carolina that expressly prohibits the taking of private property for public use without compensation (the clause in the United States Constitution to that effect applies only to acts by the United States and not to government of the State), yet the principle is so grounded in natural equity and justice that it is a part of the fundamental law of this State that private property cannot be taken for public use without just compensation. Johnston v. Rankin, 70 N.C. 555.
In the instant case the statute of the city of Monroe provides the method, and this must ordinarily be followed. The Legislature has granted this power, and we can only follow the mandate in the manner and way set forth in the act. Long v. Rockingham, ante, 204.
Now, the main question presented by this case is: Is the assessment on plaintiff's land for the improvement and pavement of Charlotte Avenue in accordance with law and valid and binding on the plaintiff? We think it is.
The preamble of the State Highway Act (chapter 2, Public Laws 1921) is as follows: "An act to provide for the construction and maintenance of a State system of hard-surfaced and other dependable roads connecting by the most practicable routes the various county-seats and other principal towns of every county in the State, for the development of agriculture, commercial and industrial interests of the State, and to secure benefits of Federal aid therefor, and for other purposes."
Section 16 of this act is as follows: "That when any portion of the State highway system shall run through any city or town of more than three thousand inhabitants, according to the last United States census, the streets of which in some considerable part shall have been paved or hard-surfaced prior to such highway construction, and it shall be found necessary to connect the State highway system with such improved streets as may be designated as part of such system, the State Highway Commission shall bear the entire cost of constructing such connecting links, the same to be uniform in dimensions and materials with such State highways, unless such city or town shall voluntarily assume and undertake the improvement of the streets forming such connecting links according to specifications approved by the State Highway Commission. *Page 684 
In all other cases of improving streets of cities and towns of over three thousand population embraced in the State highway system the entire cost of construction shall be borne by the cities and towns traversed by such highways: Provided, however, in extraordinary cases, or when the conditions, in the opinion of the State Highway Commission, justify it, said commission may in its discretion relieve any city or town of any or all of the cost of the construction of said road through said city or town, or may impose such conditions upon or make such arrangements with said city or town in connection with the construction of said road as in its discretion may seem wise and just, under all the facts and circumstances in connection therewith: Provided further, that whenever any street designated as part of the State highway system shall be surfaced by order of the State Highway Commission at the expense, in whole or in part, of a city or town, it shall be lawful for the governing body of such city or town to declare an assessment district as to the street to be improved, without petition by the owners of property abutting thereon, and to charge the proportionate cost thereof to such property.
"Notice shall be given such incorporated cities or towns by the State Highway Commission of hard-surfacing work to be done within their corporate limits, and on streets that are links in the State highway system, and said notice shall also set forth a reasonable time as to when said work shall be completed: Provided, that if said city or town fails to do work or fails to complete same within the time specified or within the requirements of the State Highway Commission, then it shall be the duty of the State Highway Commission to take over said work, charging all expenses incurred therefor, which are properly chargeable under this section, to said city or town, subject, however, to the foregoing provisos and conditions."
From a careful reading of section 16, supra, and the preamble to the State Highway Act, we conclude that the following is, in substance, a just interpretation of its meaning:
That it was necessary that the State highway system have the connecting links built through the cities and towns of the State to make a complete State system of hard-surfaced and dependable roads connecting by the most practicable routes the various county-seats and other principal towns of the State, for the development of agriculture, commercial and industrial interests of the State.
In cities or towns of over three thousand inhabitants, according to the last United States census, two provisions are made to build the hard-surfaced roads through these cities and towns as a connecting link in the system:
(1) In the cities and towns the streets of which in some considerablepart shall have been paved or hard-surfaced prior to such construction, *Page 685 
and it shall be found necessary to connect the State highway system with such improved streets as may be designated as part of such system, the State Highway Commission shall bear the entire cost of constructing such connecting links, unless such city or town shall voluntarily assume andundertake the improvement of the streets forming such connecting links.
(2) In all other cases of improving streets of cities and towns of over three thousand population, embraced in the State highway system, the entire cost of construction shall be borne by the cities or towns traversed by such highways.
In extraordinary cases, or when the conditions, in the opinion of the State Highway Commission, justify it, the commission may in its discretion relieve any city or town of any or all of the cost of constructing the connecting link, or impose such conditions upon or make such arrangements with the city or town as in its discretion may seem wise and just.
When the State Highway Commission orders any street to be hard-surfaced to make the connecting link, at the expense, in whole or in part, by the city or town, it shall be lawful for the governing body to declare an assessment district as to the street to be improved, without petition by the owners of property abutting thereon, and to charge the proportionate cost thereof to such property. This also applies when a city or town voluntarily assumes and undertakes the improvement.
Taking a common-sense, liberal view, and the intent and purpose of the act, we find two bodies — the State Highway Commission and the mayor and board of aldermen of the city of Monroe — both desirous of connecting up the city of Monroe with the Wilmington-Charlotte-Asheville Highway, a part of the State system, over Charlotte Avenue. The serious question arises, who shall pay for this improvement in the city of Monroe? It is to be hard-surfaced and improved like other links in the State system along this particular route. The State Highway Commission refused to pay for it or any part of it, and found it a necessary link in the State system, and ordered it to be hard-surfaced. What must the mayor and board of aldermen do — sit idly by, or, under section 16, "voluntarily assume and undertake the improvement of the streets forming such connecting link," etc.? They had this discretion. Under the law, others who had the streets hard-surfaced had to pay for their proportionate part of the assessment. Could they relieve the plaintiff and others, who had property along Charlotte Avenue, of the assessment, when other property owners in the city of Monroe had paid for their improvements? Would they not have given a special privilege, or "coat of many colors," to the plaintiff and others along Charlotte Avenue? Would not others who paid for their street improvement have felt that *Page 686 
all who had hard-surfaced streets should pay alike — that equal rights and equal benefits and burdens should be meted out to all the inhabitants of the city of Monroe in reference to hard-surfaced streets? To make all pay for the improvements on the same basis, the city voluntarily assumed and undertook the improvement of this connecting link and declared this link an assessment district.
The board of aldermen of the city of Monroe, under the act (section 16,supra), had the legal right to "voluntarily assume and undertake the improvement of the street (Charlotte Avenue) forming such connecting links," etc. That it had the legal right, without petition of a majority of the abutting owners of property, "to declare an assessment district as to the street to be improved," etc., Charlotte Avenue. It is a matter of common knowledge that the State highway going along Charlotte Avenue will make it no ordinary street, but a thoroughfare, and enhance values more than over other streets. No objection having been made to the assessment, etc., by the plaintiff, in the mode and manner prescribed by law, the same was legal and binding on plaintiff.
We think C. S., ch. 56, art. 9, and the State Highway Act are in parimateria, and are to be construed together. Battle v. Mercer, ante, 446. Chapter 56, article 9, supra, provides for local improvements. How assessments levied — one-half on abutting property, etc. These statutes were substantially complied with.
It may be noted that the court below deducted from the assessment on the property of plaintiff and others what the county contributed and paid for grading on Charlotte Avenue, some $4,289.37, and approved the assessment roll for the balance.
From the evidence as it appears from the record, and the law as we construe it to be, we think the court below was correct when it dissolved the restraining order, refused a permanent restraining order or injunction, and dismissed the plaintiff's action.
Affirmed.